Lee M. HAYS, Petitioner–Appellant,

v.

A.J. ARAVE, et al., Respondent–Appellee.

No. 90–16775.

United States Court of Appeals, Ninth Circuit.

Submitted Nov. 4, 1991.*

Decided Oct. 7, 1992.

* The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a).

Lee M. Hays, in pro per.

J. Robert Jibson, Deputy Atty. Gen., Sacramento, Cal., for respondent-appellee.

Before: POOLE, REINHARDT, and FERNANDEZ, Circuit Judges.

REINHARDT, Circuit Judge:

Lee M. Hays appeals the district court's dismissal of his *pro se* habeas petition. He raises numerous claims on appeal. We need address only one issue, however, because we find it dispositive.

Hays asserts that he was denied his right to be present at his sentencing when California sentenced him *in absentia*.[1] Hays has both a state and federal right to be present at his sentencing. His state right emanates from the California Constitution and section 1193 of the California Penal Code, which at the time of Hays' sentencing provided that he "must be personally present when judgment is pronounced against him, unless, after the exercise of reasonable diligence to procure the presence of the defendant, the court shall find that it will be in the interest of justice that judgment be pronounced in his absence." Hays' federal right emanates from the Constitution: he has both a due process right to be present at his sentencing, *see Brewer v. Raines*, 670 F.2d 117, 118–19 (9th Cir.1982); *see also Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975) ("It is now accepted, for example, that an accused

---

1. There is no dispute that Hays raised that issue in the district court. However, the government contends that he did not explicitly raise a Sixth Amendment right to effective assistance of counsel claim in the district court proceedings, and that he is therefore barred from raising that issue on appeal. "The Supreme Court has instructed the federal courts to liberally construe the inartful pleading' of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quoting *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982)). Liberally construed, the habeas petition Hays filed in the district court encompasses the Sixth Amendment issue. In any case, Hays clearly raised that issue in his "Objections to the Magistrate's Findings," and the district court explicitly stated that its dismissal of Hays' petition was based upon its "de novo review of this case ... *including the objections filed by petitioner*" in its September 28, 1990 order. Hays thus properly raised the Sixth Amendment issue before the district court. Accordingly, both the due process *in absentia* sentencing and right to counsel issues are properly before us.

has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings."), as well as a Sixth Amendment right to effective assistance of counsel at sentencing. *See, e.g., Mempa v. Rhay,* 389 U.S. 128, 133–34, 88 S.Ct. 254, 256–57, 19 L.Ed.2d 336 (1967); *United States v. Green,* 680 F.2d 183, 188 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1210, 103 S.Ct. 1204, 75 L.Ed.2d 445 (1983). Because we conclude that Hays' federal constitutional right to be present at his sentencing was violated, we do not address any other issue.

Hays pled guilty to various criminal charges in California on March 7, 1984. He was scheduled to be sentenced for those crimes on April 4, 1984. However, on April 1—three days prior to his sentencing—California voluntarily surrendered him to Idaho authorities pursuant to an extradition request. Two months later, Hays was sentenced in Idaho to four concurrent life terms in the Idaho state prison on May 30, 1984. On July 16, 1984, California requested Idaho to lodge a detainer against him as a preliminary step to obtaining his return so that he could be sentenced for his California crimes. Four days later, Idaho lodged the detainer.

For almost a year and a half after Idaho lodged the detainer, California did nothing to secure Hays' presence. Indeed, California awoke to Hays' continued existence only in early 1986, when Hays filed a motion in the Sacramento Superior Court to dismiss the California charges and vacate his conviction. The California court ordered the state to show cause why Hays' motion to dismiss should not be granted. California then attempted to enforce its year-and-a-half-old detainer against Hays and return him to California, but the parties to the Idaho detainer action—Idaho and Hays—stipulated that the detainer was invalid; accordingly, the Idaho court quashed California's detainer. On June 6, 1986, Idaho returned the detainer: California did not subsequently file a new detainer or request custody of Hays. On July 2,

1986, the California court ruled on Hays' motion to dismiss the California charges and vacate his conviction. The court denied Hays' motion to dismiss: it then sentenced him *in absentia* to an aggregate term of twelve years in state prison. Hays asserts that his *in absentia* sentencing violates his federal constitutional rights.

■ Hays' claim raises two questions. First, can the federal constitutional right to be present at sentencing be waived? Second, if so, was it waived in this case? With respect to the first question, the answer is "sometimes". A state criminal defendant usually may waive his federal constitutional right to be present at his sentencing in a non-capital case. *See, e.g., Brewer v. Raines,* 670 F.2d 117, 119–20 (9th Cir.1982). *But see* Annotation, *Voluntary Absence of Accused When Sentence is Pronounced,* 6 A.L.R.2d 997 (1949 & 1985 Supp. & 1991 Supp.) (listing numerous states that prohibit *in absentia* sentencing by statute).[2] Hays was sentenced in state court for a non-capital crime: his federal constitutional right to be present at his sentencing was subject to waiver. The question, then, is whether Hays waived that constitutional right.

■ California contends that by his actions, Hays waived his right to be present at his sentencing: to support that argument, it relies upon several cases in which a defendant who had fled from the authorities after the jury's verdict was permitted to be sentenced *in absentia. See, e.g., Tinghitella v. State of California,* 718 F.2d 308, 312 (9th Cir.1983); *Brewer v. Raines,* 670 F.2d 117, 119–20 (9th Cir.1982). The state is correct that when a state defendant deliberately flees before sentencing and after notice of the consequences, he generally waives his federal constitutional right to be present at his sentencing. *See Brewer,* 670 F.2d at 119–20. Here, however, Hays did not flee. Instead, he remained exactly where California had sent him—incarcerated in an Idaho state prison.

---

**2.** The issue of waiver of the right to be present in *federal* court is addressed in Rule 43 of the Federal Rules of Criminal Procedure.

Nor, unlike in the case of a fleeing prisoner, was California without the ability to secure Hays' presence for sentencing: it need only have filed a valid detainer against Hays in order to obtain custody of him. The fleeing prisoner's "waiver" of his constitutional right to be present at his sentencing thus is completely inapplicable to the present case.

■ California nevertheless contends that when Hays, a state prisoner, filed a *pro se* opposition to the *undisputedly erroneous* detainer lodged against him by California, he thereby waived his federal constitutional right to be present at sentencing. The record does not reflect that Hays was advised that any opposition to the detainer would constitute a waiver of his right to be present at his sentencing. *Cf. Brewer,* 670 F.2d at 119 (finding waiver because "[t]he record shows that petitioner was informed of his original trial date and that his trial could be held *in absentia* if he voluntarily failed to appear. This notice was sufficient to evoke a knowledgeable waiver of petitioner's right to be present."). From the record before us, it appears that the most Hays did was to notify the Idaho courts of the invalidity of the detainer lodged against him and insist upon his right to the protections of a properly processed and lawful detainer. *See* Interstate Agreement on Detainers Act, 18 U.S.C.App. § 2 (1989). In such circumstances, Hays' opposition to the detainer in no way constitutes a knowing and voluntary waiver of his federal constitutional right to be present at his sentencing. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (noting that waivers of constitutional rights must be "knowingly and intelligently

made" and are strictly construed); *United States v. Cochran,* 770 F.2d 850, 851 (9th Cir.1985) (same); *Farrow v. United States,* 580 F.2d 1339, 1355 (9th Cir.1978) (same).

■ Rather than sentence Hays before it extradited him to Idaho, California surrendered custody of him *three days* prior to his scheduled sentencing. In addition, California did not attempt to regain custody of Hays for a year and a half after it lodged the detainer against him, and even that act was performed only when Hays attempted to have the California charges dismissed. The only act performed by California designed to secure Hays' presence for sentencing was its filing of an invalid detainer. The parties to the detainer action stipulated that the detainer was in error: California does not contend and has not contended in any court that the Idaho court was incorrect in its decision to quash that detainer or that the stipulation was in any respect erroneous. Even after the detainer was quashed and returned to California, the state did not file a new detainer, nor does it contend that it attempted to obtain Hays' return through any other means. California clearly failed to exercise reasonable diligence[3] despite the ready availability of means which would have secured Hays' presence at his sentencing. *See* Interstate Agreement on Detainers Act, 18 U.S.C.App. § 2 (1989). Instead, California sentenced him *in absentia* and thereby deprived him of his constitutional liberty interest in being present at a crucial stage of his criminal proceeding. Because Hays did not waive his right to be present at his sentencing, California's action was a violation of his federal constitutional right to due process.[4]

3. California law explicitly recognizes that reasonable diligence to secure the defendant's presence is required before *in absentia* sentencing is permissible. *See Cal.Penal Code* § 1193, *supra* at 2; *see also California Constitution,* Art. I, § 15 ("The defendant in a criminal cause has the right ... to be personally present with counsel...."). The Constitution requires a similar obligation in certain circumstances. *See Smith v. Hooey,* 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969) (holding that states are under "a constitutional duty to make a diligent, good-faith effort" to acquire the presence of a

defendant incarcerated in another jurisdiction in order to comport with the constitutional requirement of a speedy trial).

4. In view of our conclusion regarding the due process issue, we need not resolve Hays' Sixth Amendment claim. *Cf. Geders v. United States,* 425 U.S. 80, 91, 96 S.Ct. 1330, 1336, 47 L.Ed.2d 592 (1976) (holding that separating and preventing a defendant from consulting with his attorney during a 17–hour overnight recess during trial was a violation of the Sixth Amendment).

We now must determine the appropriate remedy for Hays' unconstitutional sentencing. Prior to *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the answer would have been simple, because all constitutional errors resulted in reversal and a remand for proceedings that were consistent with the Constitution. In *Chapman*, however, the Court held that even constitutional errors sometimes could be "harmless" and not require reversal. *See id.* at 20–22, 87 S.Ct. at 826–27. The Court later stated that errors which mandate reversal *per se* "are the exception and not the rule." *Rose v. Clark*, 478 U.S. 570, 578–79, 106 S.Ct. 3101, 3106–07, 92 L.Ed.2d 460 (1986) (citation omitted). The most recent attempt to distinguish between errors which can be "harmless" and those which cannot occurred in *Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). According to five Justices in *Fulminante*, "trial errors" are subject to harmless error analysis while "structural" errors require automatic reversal. *Id.* —— U.S. at ——, 111 S.Ct. at 1264–65.

The present case raises the issue—one of first impression—whether the unconstitutional sentencing of an individual *in absentia* is subject to harmless error analysis or requires automatic reversal. For the reasons explained below, we hold that unconstitutional *in absentia* sentencing is a "structural" error and that a sentence resulting from such a proceeding cannot be affirmed on the basis of harmless error.

Structural errors include the absence of counsel from the trial or the presence of a judge who is not impartial, as well as the failure to permit a defendant to represent himself. *See Fulminante*, —— U.S. at ——, 111 S.Ct. at 1264–65; *see also id.* —— U.S. at ——, 111 S.Ct. at 1265 (listing other examples of structural error). Under these precedents, the unconstitutional absence of a defendant from trial indisputably would constitute structural error. The question is whether a defendant's unconstitutional absence from sentencing would also.

Our conclusion that unconstitutional *in absentia* sentencing constitutes a structural error under *Fulminante* follows partly from an analysis of the nature of sentencing proceedings. The outcome of that process—a crucial and wholly separate part of a criminal prosecution—quite literally can mean the difference between life and death. It is frequently the most important part of the criminal proceeding; in fact, because approximately ninety percent of all prosecutions culminate in guilty pleas,[5] sentencing often is the *only* contested proceeding—the only one in which the individual and the state disagree about the proper outcome. Constitutional errors affecting the entire sentencing proceeding, like constitutional errors affecting the entire trial, must be viewed with the utmost concern. Although *Fulminante* stated that structural errors are, *inter alia*, those that affect "the entire conduct of the trial from beginning to end," *Fulminante*, —— U.S. at ——, 111 S.Ct. at 1265, that comment clearly is intended to apply only to errors that affect the *trial*. It is designed to draw a line between those errors affecting the entire trial and those that involve mere "trial error". *See id.* —— U.S. ——, 111 S.Ct. at 1264. A determination whether unconstitutional *in absentia* sentencing is a "structural error" necessarily must focus not on the relation of a defendant's absence from his sentencing to his *trial*, but instead on the relationship of that absence to the sentencing proceeding.

A defendant's absence from his sentencing affects each and every aspect of that crucial phase of his criminal adjudication. A defendant who is absent from his sentencing cannot testify in his own behalf,[6]

---

**5.** *See, e.g.,* Yvette A. Beeman, *Accomplice Testimony Under Contingent Plea Agreements,* 72 *Cornell L.Rev.* 800, 801 & n. 5 (1987).

**6.** He cannot, for example, dispute testimony given by witnesses, personally challenge his presentence report, tell his own side of the story, demonstrate remorse for his crimes, or ask the court for leniency and explain why it should be given.

communicate with his counsel during the proceeding,[7] affect the participants (witnesses, the judge, the government, or his attorney) by his presence, or in any way contribute to the determination of how much of his life or liberty will be taken from him by the state. Every action that transpires in a sentencing proceeding can be fundamentally altered by the defendant's absence, and the entire process can thereby be affected. The Court in *Fulminante* identified the deprivation of the right to counsel and of the right to self-representation as archetypes of "structural defects":[8] the right to be present and participate in one's own sentencing is at least as critical and, like lack of counsel, results in the defendant's fate being determined without the presence of a crucial participant in a criminal proceeding. Unconstitutional *in absentia* sentencing thus is "structural error" because of the pervasive impact the defendant's absence may have on the entirety of his sentencing proceeding.

The next reason why unconstitutional *in absentia* sentencing constitutes "structural error" is our inability to determine accurately the impact of the error on the outcome of the proceeding. As noted in *Fulminante*, "[t]he common thread connecting the[ ] cases … involv[ing] 'trial error' " is that this type of error may be "quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* —— U.S. at ——, 111 S.Ct. at 1264. While distinguishing "harmful" from "harmless" error is a difficult task in any case,[9] an accurate assessment of the prejudice resulting from unconstitutional *in absentia* sentencing is impossible. We cannot know what a defendant would have said or done had he been present at his sentencing: indeed, even the defendant himself likely does not have this knowledge.[10] Nor can we determine to

---

**7.** A defendant sentenced *in absentia* loses the ability to inform his counsel of inaccurate statements made by witnesses or in the presentence report, to assist his lawyer in making strategic choices or assent to his lawyer's suggestions, to view the demeanor of the participants and assist his counsel to interpret and respond to those individual's reactions, and to answer questions which his attorney might have that arise during the course of the proceeding.

**8.** *See id.* —— U.S. at ——, 111 S.Ct. at 1265.

**9.** *See, e.g.,* Lee Teitelbaum et al., *Evaluating the Prejudicial Effect of Evidence: Can Judges Identify the Impact of Improper Evidence on Juries?,* 1983 *Wis.L.Rev.* 1147, 1197 (arguing that judges cannot "accurately assess the prejudice created by an item of proof"). That difficulty, among others, has been identified by several commentators as a problem with the increasing use of "harmless error" as a means of affirming criminal convictions. *See, e.g.,* Tom Stacy & Kim Dayton, *Rethinking Harmless Constitutional Error,* 88 *Colum.L.Rev.* 79 (1988); Francis Allen, *A Serendipitous Trek Through the Advance–Sheet Jungle: Criminal Justice in the Courts of Review,* 70 *Iowa L.Rev.* 311 (1985).

**10.** These facts distinguish the present case from *Boardman v. Estelle,* 957 F.2d 1523, 1524 (9th Cir.1992). In *Boardman,* we held that denial of the right of allocution—the right to speak directly to the court prior to sentencing—was subject to analysis for harmless error. *See id.* at 1530–1531. Because *Boardman* held that a constitutional violation occurs only when a defendant *affirmatively requests* to speak to the court and his request is denied, *see id.* at 1529–30, harmless error analysis is possible because the defendant's affirmative request in essence constituted an "offer of proof" that served to establish a "record" of what he would say. Because the defendant must have had *something in mind* when he requested to speak, we held in *Boardman* that we could analyze the information sought to be introduced by the defendant and determine accurately that, beyond a reasonable doubt, it would or would not have affected the sentence. *See id.* at 1528 (noting that the defendant claimed that he would have responded to a specific letter); *id.* at 1530 (remanding to the district court for a determination of whether the error was harmless based upon "what [the defendant] would have said if given the requested opportunity").

When a defendant is absent from the sentencing proceeding, however, he makes no such "proffer" or affirmative request: it therefore is pure speculation to attempt to assess what impact the unknown and unknowable acts of a defendant might have had on his sentence had he been present to perform them. The inability to assess accurately the impact of the constitutional error on the proceeding thus distinguishes the present case from *Boardman.* The pervasive impact of the defendant's absence from his sentencing on that proceeding, *see supra* at 479–480, and the fundamental nature of the liberty interest infringed by *in absentia* sentencing, *see infra* at 480–481, also distinguish the "trial error" at issue in *Boardman* from the "structural" error here.

*any* degree of accuracy how the government's arguments (and, in some instances, witnesses) and those of the defendant's counsel might have changed had the defendant been present and participated fully in the process; it is similarly impossible to determine accurately how a judge might have responded to these changes—or to the defendant's testimony or his plea for a just sentence.[11] Due to our inability to assess accurately the impact on the ultimate sentence of the defendant's absence from the sentencing proceeding,[12] we can never determine *beyond a reasonable doubt* that the error was harmless.

The final reason why unconstitutional *in absentia* sentencing cannot be affirmed on the basis of harmless error is because the right to be present at one's sentencing proceeding is a "fundamental" one, *Fulminante,* —— U.S. at ——, 111 S.Ct. at 1265, that "transcends the criminal process." *Id.* As we have noted earlier, *see supra* at 479–480, sentencing constitutes a critical and often the sole disputed portion of the criminal prosecution. A defendant who has been sentenced *in absentia* without his consent is deprived of almost all of his rights at that crucial hearing. A sentence imposed at such a proceeding is abhorrent to democratic conceptions of justice. *See, e.g., Lewis v. United States,* 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892) ("A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner."); *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970) ("One of the most basic rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."); *Bustamante v. Eyman,* 456 F.2d 269, 271–72 (9th Cir.1972) ("The right of a defendant charged with a felony to be personally present in the courtroom at every stage of his trial conducted there is fundamental to our system of justice.... This principle has been consistently upheld and continually reaffirmed.") (citations omitted).

Not only does the defendant gain by personal presence at his sentencing, but society as a whole gains both symbolic and practical benefits from the public pronouncement of a sentence which is tailored to the defendant and delivered in his presence. As one commentator noted:

> "Presence is of instrumental value to the defendant for exercise of other rights, such as to present mitigating evidence and to challenge aggravating evidence, and it may also be advantageous to him that the decisionmaker be required to face him.... However, there is an additional and perhaps more fundamental justification for the right to be personally present. Respect for the dignity of the individual is at the base of the right of a man to be present when society authoritatively proceeds to decide and announce whether it will deprive him of life or how and to what extent it will deprive him of liberty. It shows a lack of fundamental respect for the dignity of a man to sentence him *in absentia.*"

---

11. With rare exceptions, our system of criminal justice operates under the assumption that the sentence should fit not only the crime, but the defendant as well. Thus, courts assume—as we must—that the sentencing proceeding is not merely a *pro forma* process with a predetermined result, and that a defendant's participation in that process can be meaningful. *Cf. Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (holding that mandatory death sentences were unconstitutional). Under federal law, the sentencing guidelines afford wide discretion within certain limited ranges. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (discussing the history of federal sentencing discretion and upholding the constitutionality of the sentencing guidelines). In the present case, state law did not predetermine the length of Hays' sentence. We express no opinion on the validity of applying "harmless error" analysis in cases in which mandatory sentences for fixed terms are imposed and the judge has no discretion to impose any different sentence.

12. That is the case not only (as here) in state court, but in federal court as well. This is especially the case given the increasing use of victim impact testimony in federal sentencing proceedings. *See Payne v. Tennessee,* —— U.S. ——, ———–———, 111 S.Ct. 2597, 2605–09, 115 L.Ed.2d 720 (1991) (permitting introduction of such testimony).

Note, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv.L.Rev. 821, 831 (1968) (footnotes omitted). The deprivation of such a crucial liberty thus has not only tangible consequences for the individual defendant, but (like a violation of the right to a public trial or a race-neutral jury, *see Fulminante*, —— U.S. at ——, 111 S.Ct. at 1265) also "undermine[s] the structural integrity of the criminal tribunal itself," *Vasquez v. Hillery*, 474 U.S. 254, 263, 106 S.Ct. 617, 623, 88 L.Ed.2d 598 (1986). Under these circumstances, "no criminal punishment may be regarded as fundamentally fair." *Fulminante*, —— U.S. at ——, 111 S.Ct. at 1265 (quoting *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3105–06, 92 L.Ed.2d 460 (1986) (citation omitted)). The fundamental nature of the prohibition against unconstitutional *in absentia* sentencing is the final reason why harmless error analysis is inappropriate in the present case.

Each of the above analyses is sufficient by itself to remove unconstitutional *in absentia* sentencing from the type of "trial errors" identified by *Fulminante*—errors which are amenable to review for harmless error. In combination, they demonstrate unequivocally that a sentence that results from such a proceeding "def[ies] analysis by 'harmless error' standards" and cannot be permitted to stand. *Fulminante*, —— U.S. at ——, 111 S.Ct. at 1265. Unconstitutional *in absentia* sentencing constitutes a structural defect in the process. Thus, Hays' sentence must be vacated. Accordingly, we reverse the district court's dismissal of Hays' habeas petition and remand with directions to grant an appropriate writ.

REVERSED AND REMANDED

POOLE, Circuit Judge, dissenting:

Because Hays could have invoked his right to be present at sentencing using the procedures provided under the IAD, and in light of the fact that he did not exhaust the remedies available to him under the IAD *and* impeded California's efforts to procure his presence for sentencing, I respectfully dissent.

The IAD provides two means by which a prisoner may be brought to another state for the disposition of pending charges. Article IV provides that a prisoner against whom a detainer has been lodged may be made available to a requesting state upon written request for temporary custody or availability to the appropriate authorities in the state where the prisoner is serving his sentence. *See* Interstate Agreement on Detainers, 18 U.S.C.App. § 2, art. IV(a). Article III of the IAD provides that a prisoner shall be brought to trial in a state which has lodged a detainer against him within 180 days of his giving notice of the place of his imprisonment and of his request for a final disposition to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction. *See id.*, art. III(a).

California filed a detainer against Hays on July 16, 1984. The detainer was lodged on July 20, 1984. Once California filed the detainer, Hays became subject to the procedures of the IAD.[1]

No further action was taken by California or Hays until January 7, 1986, when Hays filed a motion to dismiss the complaint, alleging denial of his right to a speedy trial and California's waiver of jurisdiction over him by extraditing him to Idaho. The hearing on Hays's motion was postponed until his case was referred on May 7, 1986, to a probation officer for a supplemental presentencing report. By an order dated May 30, 1986, an Idaho district court quashed California's detainer, *stipulating* with Hays that the detainer lodged against him and the subsequent request for custody were in error, presumably because of California's failure to request custody at the time the detainer was filed. There is no requirement under either the California or Idaho version of the IAD that a state request custody at the time a detainer is

---

1. Even if the California court had subsequently issued a writ of habeas corpus ad prosequendum to the Idaho prison authorities, the writ would have been construed as a request for custody under the IAD. *See United States v. Mauro*, 436 U.S. 340, 363, 98 S.Ct. 1834, 1848, 56 L.Ed.2d 329 (1978).

filed. *See* Cal.Penal Code § 1389 (West 1982 & 1992 Supp.); Idaho Code § 19–5001(d)(1) (Michie 1992). The detainer was returned to California on June 6, 1986.

On July 2, 1986, the California court denied the motion to dismiss and sentenced Hays to 12 years imprisonment. The court found that, by opposing his return to Idaho, Hays waived his right to be present at sentencing, and sentenced him *in absentia.* Hays has yet to request that he be brought to California under the provisions of the IAD. The question remains whether Hays is entitled to habeas relief; the answer is no.

Other circuits have denied habeas relief when a prisoner has failed to exhaust the state remedies available to him under the IAD. *See Norton v. Parke,* 892 F.2d 476, 479–80 (6th Cir.1989) (prisoner challenging extradition action must resort to the remedies provided by the IAD before seeking federal habeas relief), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1533, 108 L.Ed.2d 772 (1990); *Grant v. Hogan,* 505 F.2d 1220 (3d Cir.1974) (prisoner seeking relief from a detainer lodged against him must pursue his remedies under the IAD before seeking federal habeas relief); *cf. Kane v. Virginia,* 419 F.2d 1369, 1373 (4th Cir.1970) (petitioner cannot prevail on speedy trial claim in federal habeas corpus proceeding unless he demanded a speedy trial). In the context of a speedy trial claim, the Fourth Circuit in *Kane v. Virginia* held that a prisoner is entitled to federal habeas relief if: (1) the prisoner demanded a speedy trial; (2) the state failed to make a diligent effort to obtain him for trial; and (3) that he has exhausted his state remedies as required by 28 U.S.C. § 2254 by seeking dismissal of the charges against him because of unconstitutional delay. *Kane,* 419 F.2d at 1373. Foremost among these requirements is a demand by the prisoner for disposition of the case. The Supreme Court has implicitly required such a demand before granting a prisoner relief. *See Smith v. Hooey,* 393 U.S. 374, 383–84, 89 S.Ct. 575, 579–80, 21 L.Ed.2d 607 (1969); *cf. United States v. Mauro,* 436 U.S. 340, 364–65, 98 S.Ct. 1834, 1849–50, 56 L.Ed.2d 329 (1978) (defendant's alleged failure to invoke the IAD did not result in waiver as he had made numerous requests for a speedy trial). Hays has yet to make a demand to be present for sentencing; in fact, he undermined efforts to secure his presence by stipulating with Idaho authorities to the alleged invalidity of the detainer.

The majority notes that under California Penal Code § 1389, California could not sentence Hays *in absentia* without making a good-faith effort to secure his presence, and finds that California did not use reasonable diligence to procure Hay's presence. To the contrary, California met the requirements of the IAD and could reasonably conclude that it was in the interests of justice to sentence Hays *in absentia.* Due process would only have been violated had Hays demanded sentencing and *then* been denied his right to be present. *See Smith v. Hooey,* 393 U.S. 374, 383–84, 89 S.Ct. 575, 579–80, 21 L.Ed.2d 607 (1969) (failure of State to secure a prisoner's presence for trial against whom it has filed a detainer after repeated demands by the prisoner violates the Due Process Clause) (Opinion of Harlan, J.); *cf. id.* at 383, 89 S.Ct. at 579 (under the sixth amendment right to a speedy trial, the state has a constitutional duty to make a diligent, good faith effort to bring a prisoner serving a term in another state to trial); *Tinghitella v. California,* 718 F.2d 308, 313 (9th Cir.1983) ("Even were we to conclude that sentencing is included within the speedy trial guarantee, the constitutional duty of the state to make a diligent, good-faith effort to sentence, and thus petitioner's right to be sentenced, arises only upon the petitioner's demand.").

It is not Hays's failure to assert his right by itself which constitutes waiver; his actions in quashing the detainer with the knowledge that all that remained of his trial was the pronouncement of sentence, in light of his failure to initiate proceedings under the IAD, constitute waiver. We may, under certain circumstances, infer waiver from a defendant's acts. *See United States v. Edwards,* 897 F.2d 445 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 560, 112 L.Ed.2d 567 (1990). This is just such a circumstance.

484

The majority rewards Hays for his circumvention of the California criminal justice system, something which I am not willing to do. I dissent.