**John Gregory LEE, Petitioner,**

v.

**C. MARSHALL, Warden, Respondent.**

**No. CV 93–0224 JSL.**

United States District Court,
C.D. California.

Dec. 27, 1993.

---

**37.** See supra, footnote 12.

Elsa Leyva, Los Angeles, CA, for petitioner.

Sharon Wooden Richard, Deputy Atty. Gen., Los Angeles, CA, for respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

LETTS, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the Petition, all of the records and files herein and the attached Report and Recommendation of the United States Magistrate Judge. The Court concurs with and adopts the conclusions of the Magistrate Judge.

The Court further notes that the intrusion into the jury room was done without the knowledge of the trial judge, and that the trial judge was put in the position of having to accept the self-serving statements of the intruders as to what transpired while they were in the jury room. The Court believes that such statements are an insufficient basis for the conclusion that the intrusion was harmless.

IT IS THEREFORE ORDERED that the Petition filed herein is hereby GRANTED, and that Respondent have 60 days in which to institute a new trial or order Petitioner's release.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and the order herein by United States mail on Petitioner, counsel for Petitioner and counsel for Respondent.

THIS ORDER SHALL BE ENTERED ACCORDINGLY.

## FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HILLMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to United States District Judge J. Spencer Letts pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

### I. *PROCEDURAL BACKGROUND*

In 1982, petitioner was tried and convicted for conspiracy to commit murder. The conviction was affirmed by the California Court of Appeal, Second Appellate District. (Ret. Ex. A). In 1990, the California Supreme Court denied a petition for a writ of habeas corpus without citation to authority. (Ret. Ex. C). Petitioner filed a second petition for a writ of habeas corpus with the California Supreme Court later that same year. (Ret. Ex. D). The second petition was denied with citations to *In Re Miller,* 17 Cal.2d 734, 112 P.2d 10 (1941) and *In Re Swain,* 34 Cal.2d 300, 209 P.2d 793 (1949). (Ret.Ex. E).

Pursuant to the provisions of 28 U.S.C. § 2254, petitioner filed this petition for a writ of habeas corpus, in forma pauperis, on January 14, 1993. The Magistrate Judge requested a response, which was filed on March 18, 1993. Petitioner filed a Traverse on April 19, 1993. While the matter was under submission, the Supreme Court decision in *Brecht v. Abrahamson, infra,* was issued. The Magistrate Judge requested additional briefing on the impact of the *Brecht* decision as well as additional factual information. Finally, on September 14, 1993, an evidentiary hearing was held to further develop the factual record. Post-hearing briefing was filed, and the matter was taken under submission.

### II. *FACTUAL BACKGROUND*

Petitioner claims he did not receive a fair trial because at least one[1] of two police officers affiliated with the prosecution was permitted to operate a video recorder for the

---

1. As fully discussed later in this Report and Recommendation, the record reflects that there were actually two officers in the jury room for a portion of the re-play of the tape.

jury in the jury room during deliberations. Petitioner further alleges that neither he or his counsel were present in the jury room. (Pet. p. 6).

It appears that the discovery of the two officers exiting the jury room was accidental. Co-defense counsel arrived at the courtroom to give/deny consent to rereading of testimony without counsel's and co-defendants' presence. Since petitioner's counsel had previously waived petitioner's and his own presence, no appearance was made by them.[2] (RT 1126).

Upon arrival at the courtroom, co-defense counsel saw Officers Jacobs and Bumpus *exiting* the jury room. (RT 1131). The bailiffs assigned to the jury were in the courtroom, not the jury room, at this time. (RT 1133.) Co-defense counsel moved for a mistrial, which was denied. (*Id.* at 1137).

Officer Jacobs had investigated the murder, and sat at the prosecution table during the trial and otherwise assisted the prosecutor during the trial. (HT 12–13;)[3] The second, Officer Bumpus, had operated the video tape machine during the trial before the jury. (HT 17, 24, 28). The police officers were questioned under oath by co-defendant's counsel.[4] (RT 1126–1137).

The judge, as well as co-defendant's counsel *assumed both* officers *remained* in the jury room the entire time. (RT 1141–44; HT 33–34). However, in the evidentiary hearing before the Magistrate Judge, Officer Jacobs testified he simply brought the machine into the jury room with Officer Bumpus and then he departed, leaving Bumpus alone in the room. (HT 14). The Magistrate Judge finds Officer Jacobs' testimony on this point to be credible.

Co-defense counsel and the Prosecutor then had a second opportunity to present their arguments regarding the turn of events. (RT 1143–1146; 1153–1154). Although the trial judge did not question the individual jurors, he determined there was no prejudice. (*Id.* at 1146). This evidentiary conclusion is entitled to no deference as to *petitioner's* case, since the material facts were not adequately developed and neither petitioner or his counsel were present. 28 U.S.C. § 2254(d)(3).

Respondent argues that the petitioner has failed to exhaust state remedies. Alternatively, respondent argues that although it was error to allow the police officers in the jury room, the error was harmless beyond a reasonable doubt.

For the reasons set forth below, the Magistrate Judge deems the claims exhausted. Moreover, the Magistrate Judge determines that a "structural error" occurred in petitioner's trial, requiring the writ be granted.

### III. *DISCUSSION*

#### A. PETITIONER HAS EXHAUSTED HIS STATE REMEDIES

It is well settled that "as a matter of comity, a federal court will not grant a state prisoner's petition for writ of habeas corpus unless.it appears the petitioner has exhausted available state remedies ... State remedies have not been exhausted unless petitioner's federal claim has been 'fairly be presented to the state court,' ... and the highest court has disposed of the claim on the merits ..." [citations omitted]. *Carothers v. Rhay,* 594 F.2d 225, 228 (9th Cir.1979). Exhaustion is not jurisdictional.

In this case, the fate of petitioner's federal habeas corpus petition seems to lie within a paradox created by the State Supreme Court. Although it is somewhat unclear, it seems petitioner has satisfactorily met the exhaustion requirement.

---

**2.** While it appears current Ninth Circuit cases hold that the defendant's personal waiver must be obtained (rather than just counsel's) regarding the rereading of testimony, that issue was not raised in the instant petition and shall not be considered.

**3.** "HT" refers the transcript of the evidentiary hearing held in this court on September 14, 1993.

**4.** Throughout its briefing to this Court, respondent frames its arguments as if petitioner's counsel were present. This is patently untrue. Petitioner was represented by a Mr. Hamel. It is clear that only co-defendant's attorney, Ms. Cunningham, was present when the issue arose (RT 1126).

In the second petition before the California Supreme Court, petitioner raised the due process claim regarding the police officers in the jury room. In response to the second petition, the California Supreme Court denied the petition with citation to *In Re Miller,* 17 Cal.2d 734, 112 P.2d 10 (1941) and *In Re Swain,* 34 Cal.2d 300, 209 P.2d 793 (1949). No further explanation was given.

A citation to *In Re Miller,* 17 Cal.2d 734, 112 P.2d 10 (1941) indicates that the petition is denied for the same reasons as the previous petition. *Kim v. Villalobos,* 799 F.2d 1317, 1319, n. 1 (9th Cir.1986). Since the previous petition was denied without citation, indicating it was denied on its merits, *Roman v. Estelle,* 917 F.2d 1505, 1506 (9th Cir.1990), this Court may infer that the denial of the claims in the second petition that were raised in the first petition was also premised on the merits.

The California Supreme Court also cited *In Re Swain,* 34 Cal.2d 300, 304, 209 P.2d 793 (1949). A denial citing *Swain,* can have two separate meanings. Since the California Supreme Court declined to specify on which ground it was relying, both shall be discussed. The first meaning of *Swain* is that petitioner has not alleged his claim with sufficient particularity, a procedural deficiency. *Kim v. Villalobos,* 799 F.2d 1317, 1319 (9th Cir.1986). If the denial is for insufficient facts, the reviewing court must determine if the claim was presented with as much particularity as practicable. *Id.* at 1319. This Court has reviewed petitioner's second petition to the California Supreme Court and determines that the claim was presented with as much particularity as possible.

The second meaning of *Swain* is that the petitioner has failed to explain the delay in raising the issue. The reason for delay in the instant case is clearly illustrated by the record. As fully discussed below, neither the petitioner or his attorney were present in the courtroom when the error occurred. It appears the error was first raised in the co-defendant's 1989 federal habeas petition. This is most likely the first time petitioner became aware of the error. Petitioner's second state habeas was filed in March, 1990. (Ret.Ex. D).

Therefore, the Magistrate Judge concludes that there was justification for the delay and that the claim was presented with as much particularity as practicable. Hence, the petitioner has fulfilled the exhaustion requirement.

## B. THE ERROR REQUIRES ANALYSIS UNDER *BRECHT V. ABRAHAMSON*

The right of criminal defendant

"to be personally present in the courtroom at every stage of his trial conducted there is fundamental to our system of justice. This right was recognized by the Supreme Court many years ago: 'a leading principle that pervades the entire law of criminal procedure is that after indictment found, nothing shall be done in absence of the prisoner. *Lewis v. U.S.,* 146 U.S. 370, 372, 13 S.Ct. 136, 137, 36 L.Ed. 1011 (1892) ... This rule includes the defendant's right to be present whenever the court communicates with the jury. *Shields v. U.S.,* 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927).'"

*Bustamante v. Eyman,* 456 F.2d 269, 271 (9th Cir.1972).

This fundamental right is guaranteed by the due process clause of the Fifth Amendment, the Confrontation Clause of the Sixth Amendment and, in state cases, by the Fourteenth Amendment. *See e.g., Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); *Snyder v. Massachusetts,* 291 U.S. 97, 107–108, 54 S.Ct. 330, 332–332, 78 L.Ed. 674 (1934).

Absent his personal waiver, petitioner had a fundamental right to be present with counsel while police officers who were affiliated with the prosecution were with the jury during deliberations. This right cannot be waived by anyone other than *the defendant himself.* *United States v. Kupau,* 781 F.2d 740, 743 (9th Cir.1986) *cert. denied,* 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 45 (1986).

Respondent does not argue that petitioner waived his right to be present. Nor can any such waiver be inferred from the record. Petitioner's counsel only consented to the playing of either the original video tape in

evidence, (which could only be played on police department equipment,) or to the replay of a copy of the tape which could be played on courthouse equipment. (RT 1125).

The transcript is devoid of any indication of the petitioner consenting to a member of the police department generally, or an investigating officer specifically, going into the jury room to replay the tape. Therefore, it was error to allow the police officers to operate the video tape machine for the jury without petitioner being present or obtaining his waiver.

## C. THE ERROR WAS "STRUCTURAL" REQUIRING THE WRIT BE GRANTED

The impact of the error is an issue of first impression. Prior to the recent Supreme Court decision in *Brecht v. Abrahamson,* — U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), the error of permitting non-neutral persons in the jury room during deliberations without a defendant's consent was subject to a harmless error analysis. *Bustamante v. Eyman,* 456 F.2d 269, 271 (9th Cir.1972); *United States v. Kupau,* 781 F.2d at 743; *U.S. v. Brown,* 832 F.2d 128 (9th Cir.1987).

Under *Brecht*[5] the analysis of constitutional errors in collateral attack proceedings fall into two categories. The first type is a "trial type" error which "occurs during the presentation of the case to the jury . . ." and the error can be quantitatively assessed in the context of other evidence in order to determine its effect on the trial. *Brecht* — U.S. at ——, 113 S.Ct. at 1717. Such errors

requires establishing that the error did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Kotteakos v. U.S.* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946).[6]

The second type is "structural" error. If an error is structural, it requires the conviction be overturned and the writ be granted. *Id.* — U.S. at ——, 113 S.Ct. at 1717. Although there is no case law on point, analogous case law requires the conclusion that the error in this case be deemed structural.[7]

The *Brecht* court described structural errors as those which lie within the trial mechanism, "which defy analysis by harmless error standards." *Brecht* —— U.S. at ——, 113 S.Ct. at 1717 quoting *Arizona v. Fulminante,* 499 U.S. 279, 290–291, 111 S.Ct. 1246, 1254, 113 L.Ed.2d 302 (1991)[8] The Ninth Circuit includes in the definition of a structural error the violation of a fundamental right. *Hays v. Arave,* 977 F.2d 475, 481 (9th Cir.1992).

In *Hays,* the Ninth Circuit held that the absence of the defendant from a sentencing hearing was a structural error. In support of its conclusion, the Court declared the right to be present at sentencing to be fundamental and cited to, *inter alia, Bustamante v. Eyman,* 456 F.2d 269 (9th Cir.1972). It is *Bustamante* which requires the personal waiver of the defendant to have non-neutral persons in the jury room. From this citation it can be inferred that the rights in *Bustamante* are also "fundamental." In addition, the impact of the police officers' presence in the jury room cannot be quantified. As in

---

**5.** *Brecht* applies to the instant petition even though it was decided after the filing of the petition, since the Supreme Court applied the new standard to the petitioner in that case. *See Henry v. Estelle,* 993 F.2d 1423, 1427 n. 2 (9th Cir.1993).

**6.** Justice Stevens, one of the five member majority also separately concurred, stating the burden was merely lowered not shifted to the petitioner. *See Brecht,* —— U.S. at ——, 113 S.Ct. at 1723 (Stevens, J. concurring). However, the Ninth Circuit has recently held that the burden has shifted to the petitioner. *Henry v. Estelle, supra.*

**7.** The Supreme Court indicated that constitutional errors actually fall within a "spectrum." *Id.* —— U.S. at ——, 113 S.Ct. at 1717. The Magis-

trate Judge is inclined to believe that the error in the instant case falls in the mid-point of the spectrum, and that the error herein has elements of both the "structural" *and* "trial type" categories. However, the Supreme Court has not yet offered guidance as to what analysis would apply in such a situation. Therefore, the Magistrate Judge is compelled to assign the error in one of the two categories.

**8.** The opinion in *Fulminante* included in the listing of structural errors the absence from counsel from trial, a judge who is not impartial, denial of the defendant's right to represent himself, unlawful exclusion of members of the defendants race from the grand jury and denial of a public trial. *Fulminante* 499 U.S. at 307–311, 111 S.Ct. at 1264–1265, 113 L.Ed.2d at 331.

*Hays*, this Court is unable "to determine accurately the impact of the error on the outcome of the proceeding." *Hays* at 480. This inability to quantify is illustrated by the decisions in *U.S. v. Brown*, 832 F.2d 128 (9th Cir.1987) and *U.S. v. Pittman*, 449 F.2d 1284 (9th Cir.1971).

As eloquently stated in *Pittman*, allowing adversaries to "assist the jury privately in meeting the needs of its deliberations, is to present such adversaries in a trustworthy, friend-of-the-jury capacity wholly at odds with the adversary posture" in which their association should be assessed. "The impact upon the jury of such a subtle suggestion cannot be accurately measured or even ascertained." *Pittman* at 1286.

In *Brown*, a U.S. Marshal who sat at the prosecution table and played a tape recording during the trial, played the same tape for the jury during deliberations. Neither the defendant or counsel were present. The *Brown* Court reasoned that any prejudicial contact between the Marshal and the jury "could be very subtle, such as a nod at a significant portion of the tape." 832 F.2d at 130. The Court also noted that such conduct could be completely unintentional, "or even unnoticed by the case agent himself." *Id.* The Court also found unconvincing the Marshal's uncorroborated affidavit that no prejudicial contact occurred. The Court explained that the Marshal was not a neutral observer in the controversy, such as a bailiff. *Id.*

Similarly, in this case two police officers complete with weapons and badges,[9] associated with the prosecution replayed a video tape for the jury during deliberations. Neither petitioner, his counsel or the bailiffs assigned to supervise the jury were present. It is true that the trial court questioned the two officers under oath regarding their contact with the jurors. The officers testified that no substantive conversations with the jurors occurred. (CT pp. 1135–1137). However, this is not dispositive.

Respondent counters that since the police officers did not testify in the presence of the jury and were not in uniform while in the jury room, their presence had no impact.

(Ret. p. 8). As previously stated, the police officers carried their guns and badges. Moreover, the police officers' attire does not erase the fact that they were affiliated with the prosecution and had an interest in the outcome. Regardless of their manner of dress, the officers may have made gestures, albeit subconscious, during the replay of the video. Nor is the Court persuaded by the fact that these officers did not testify. Officers Jacobs sat at the prosecution table.

Further, in his objections, Respondent argues that Officer Bumpus' role is distinguishable from *Brown* and *Pittman* because he was not an active case agent. This argument ignores that Officer Bumpus was a police officer who assisted the prosecution during trial. Bumpus was not a neutral court officer and was in the jury room without the supervision of the bailiffs.

In the instant case, the sanctity of the jury room was breached without even the judge's knowledge or supervision by the bailiffs. Unlike *Bustamante*, no jury instruction was given to cure the error.

The presence of the two police officers during the deliberations turned the deliberation process into a proceeding at which petitioner had, absent his personal waiver, the fundamental right to be present. There is no methodology by which to quantify the impact this may have had on the outcome. Hence, the error is properly designated as a structural one.

Finally, like the sentencing hearing in *Hays*, jury deliberations are insular, separate and distinct from the trial itself. "[A]ccess to the jury during its deliberative process by any adversary simply cannot be tolerated." *U.S. v. Pittman*, 449 F.2d 1284, 1286 (9th Cir.1971): *See Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965).

No one other than jurors are to be present during deliberations. If communication or contact is necessary, it is to be done with all safeguards intact: namely, with the judge, counsel and parties present. Hence, construing *Brecht, Hays* and *Brown* together, the

---

**9.** Officer Jacobs testified that his and Officer Bumpus' usual in-court dress was shirt, tie, jacket and trousers, as well as their guns and badges. (HT 15, 23, 27).

failure to obtain the petitioner's personal waiver compels the presence of police officers in the jury room during deliberations to be a structural error.

### D. THE NINTH CIRCUIT'S DECISION ON THE CO–DEFENDANTS' WRIT IS NOT APPLICABLE TO THIS MATTER

Finally, respondent notes that the issue "identical" to the issue in this case was raised by petitioner's co-defendant before the Ninth Circuit. Respondent argues that the Ninth Circuit's unpublished opinion in that matter (Ret.Ex. F) is the law of the case and therefore may be cited to support the similar result as to this petition. The Magistrate Judge disagrees, since petitioner was not a party to the co-defendant's *habeas* proceedings. The Magistrate Judge is also unpersuaded by respondent's argument that somehow the principles of collateral estoppel or *res judicata* should apply here.

Accordingly, the Ninth Circuit's unpublished decision does not prevent a different outcome in this case. Additionally, the facts of the co-defendant's case are singular to him, since neither *petitioner* or *petitioner's* counsel were present when the issue arose. Any argument to the contrary by the respondent is disingenuous. Finally, the relevant law has changed significantly since the decision in the co-defendant's *habeas* proceeding.

### IV. *RECOMMENDATION*

Based upon the foregoing, it is hereby recommended that the petition for a writ of habeas corpus be GRANTED, and that the respondent have 60 days in which to institute a new trial or order petitioner's release.

DATED: 11–1–93