**Minh LUU, Petitioner,**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 91SC413.**

Supreme Court of Colorado, En Banc.

Nov. 16, 1992.

Rehearing Denied Dec. 14, 1992.

David F. Vela, State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, for petitioner.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Paul Koehler, Asst. Atty. Gen., Criminal Enforcement Section, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

Petitioner Minh Luu (Luu) petitions from the court of appeals decision in *People v. Luu*, 813 P.2d 826 (Colo.App.1991). The court of appeals found that Luu's federal constitutional right to be present at his trial was not violated by the absence of an interpreter during closing arguments and the giving of jury instructions.[1] We affirm the court of appeals.

## I.

The People of the State of Colorado (the People) charged Luu with second degree kidnapping, aggravated robbery, first degree burglary, conspiracy, second degree assault, and crime of violence, among other things. The charges stemmed from events which occurred on November 21, 1986, in the home of Yoshiyuki Saito. Luu is Vietnamese, and it is not disputed that Luu did not understand or speak English at the time of trial.[2]

Prior to commencement of a jury trial, the district court swore in a confidential interpreter for Luu, establishing that the interpreter would translate from English to Vietnamese and vice versa. On December 8, 1987, a jury trial commenced and continued for four days. Luu was present throughout the entire trial. An interpreter for Luu was present during opening arguments and during the presentation of evidence. An interpreter for Luu, however, was not present on December 14, when counsel delivered closing arguments and the district court instructed the jury. On December 14, counsel for Luu informed the court:

Mr. Luu's interpreter is not present. However, we are prepared to proceed.... I don't think the interpreter is necessary for me to make my closing argument. I could be wrong about that. I think we prefer that we get this thing to the jury. I don't think it's going to affect Mr. Luu's right in this case. That is my personal opinion but I would perhaps ask this court to explain why the interpreter isn't here because I think if the jury sees they are not here there may be problems.

The district court noted that the interpreters had been introduced to the jury, and that the jury was entitled to know why a party was missing from counsel's table. The district court accordingly informed the jury: "I want to indicate that the gentleman who had been seated at the defense table during part of the trial, Mr. Nguyen, is for reasons that we've not been informed of not able to be here. So he's not here at this time." Counsel subsequently present-

---

1. Luu first raised allegations of error under the Colorado Constitution in his petition for rehearing to the court of appeals. "Issues not raised in appellant's initial brief will normally not be considered by the court." *People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo.1990); 16 Charles A. Wright et al., *Federal Practice and Procedure*

§ 3974 (1977). We do not consider the Colorado constitutional issues at this time.

2. It appears from the record that an interpreter for Luu was present during many of the pretrial proceedings.

ed closing arguments, and the district court instructed the jury. After deliberations, the jury returned a verdict finding Luu guilty of two counts of second degree kidnapping, two counts of aggravated robbery, first degree burglary, second degree burglary, conspiracy, and theft.

Luu appealed his convictions to the court of appeals. He contended that the failure to provide an interpreter, during both closing arguments and the giving of jury instructions, amounted to reversible error because it violated his right to be present at trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitutions. The court of appeals observed that the harmless error test announced in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), had been applied to "a wide range of situations". *Luu*, 813 P.2d at 828. Relying in part on federal case law, the court of appeals concluded that any error in the failure to provide an interpreter was harmless beyond a reasonable doubt. *Id.*

We granted certiorari to consider "whether the court of appeals erred in applying harmless error analysis to determine whether the defendant's conviction should be reversed because the defendant's interpreter was not present during closing arguments and the reading of jury instructions."[3] Luu first contends that the harmless error doctrine is not appropriately applied to denial of the right to be present at trial. Luu alternatively contends that any error cannot be found harmless in the event that the doctrine does apply in this case. We first consider whether the court of appeals correctly determined that the harmless error doctrine applies to denial of the right to be present at trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

## II.

■ It is well settled in federal law that an accused enjoys a constitutional right to be present at trial. *United States v. Gagnon*, 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985); *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). "The [federal] constitutional right to presence is rooted to a large extent in the Confrontation Clause of the Sixth Amendment, but ... [that] right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484 (citation omitted). Whether secured by the Sixth or Fourteenth amendments, the federal constitutional right to presence is not absolute.[4] *United States v. Shukitis*, 877 F.2d 1322, 1329 (7th Cir.1989).

Since its landmark decision in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court "has recognized that most constitutional errors can be harmless." *Arizona v. Fulminante*, —— U.S. ——, ——, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991). In support of this observation, the *Fulminante* Court relied on *Rushen* and explained that *Rushen* stands for the proposition that denial of a defendant's right to be present at trial may be harmless error. *Id.* —— U.S. at ——, 111 S.Ct. at 1263.[5]

---

3. While the United States Supreme Court has not expressly so held, we assume, for the purposes of this case, that the absence of an interpreter for non-English-speaking defendants at trial amounts to denial of the right to be present at trial under federal law. *See Larson v. Tansy*, 911 F.2d 392 (10th Cir.1990) (holding that defendants have a federal constitutional right to be present at summations and jury instructions).

4. Rule 43 of the Federal Rules of Criminal Procedure, which provides defendants in federal trials a right to be present, specifies the manner in which the right may be waived. Fed.

R.Crim.P. 43(b); *see United States v. Gagnon*, 470 U.S. 522, 527–29, 105 S.Ct. 1482, 1484–86, 84 L.Ed.2d 486 (1985) (applying Rule 43). Because we conclude that any federal constitutional error is harmless, we do not address whether Luu waived his right to be present.

5. Prior to its decision in *Arizona v. Fulminante*, —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the United States Supreme Court stated that harmless error doctrine "has been applied to a wide variety of constitutional errors." *Rose v. Clark*, 478 U.S. 570, 576, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986). In support of that state-

Luu contends that the court of appeals' reliance on *Fulminante* is misplaced because *Rushen* is distinguishable from Luu's case. In *Rushen*, the trial judge had several *ex parte* communications with a juror. *Rushen*, 464 U.S. at 115–16, 104 S.Ct. at 454. Upon learning of the *ex parte* communications, defendant Spain moved for a new trial. The trial court denied Spain's motion on the grounds that the trial court's communications with the juror " 'lacked any significance' and that [Spain] suffered no prejudice therefrom." *Id.* at 116, 104 S.Ct. at 454. Spain filed a petition for a writ of habeas corpus in federal district court, and the district court vacated Spain's conviction. *Id.* at 117, 104 S.Ct. at 455. The Court of Appeals for the Ninth Circuit affirmed, holding that *ex parte* communications between a judge and a juror can never be harmless error. *Id.*

The United States Supreme Court "emphatically disagree[d]," and stated that

the right to personal presence at all critical stages of the trial and the right to counsel are fundamental rights of each criminal defendant. "At the same time and without detracting from the fundamental importance of [these rights], we have implicitly recognized the necessity for preserving society's interest in the administration of criminal justice. Cases involving [such constitutional] deprivations are [therefore] subject to the general rule that remedies should be tailored to the injury suffered … and should not unnecessarily infringe on competing interests."

*Id.* at 117–18, 104 S.Ct. at 455 (alterations in original) (footnote omitted) (quoting *United States v. Morrison*, 449 U.S. 361, 364, 101 S.Ct. 665, 667–68, 66 L.Ed.2d 564 (1981)). The *Rushen* Court concluded that, while *ex parte* communications may pose serious concerns, the lower federal court "should have found the alleged constitutional error harmless beyond a reasonable doubt" in that case. *Id.* 464 U.S. at 121, 104 S.Ct. at 456.

■ As the Supreme Court has declared, we are compelled to find that *Rushen* stands for the proposition that allegations of denial of the right to be present at trial are scrutinized under the harmless error doctrine. *Fulminante*, —— U.S. at ——, 111 S.Ct. at 1263; *Rose*, 478 U.S. at 576, 106 S.Ct. at 3105; *Rushen*, 464 U.S. at 117–21, 104 S.Ct. at 454–56. Evaluated against this declaration, Luu's contention is unpersuasive.

The distinction between *Rushen* and the present case lies in the manner in which the defendant allegedly suffered a deprivation of the right to be present at trial. *Rushen* was not physically present during conversations between the trial judge and juror. Luu was physically present during his trial, but was not provided with an interpreter during closing arguments and jury instructions. In both scenarios, a defendant may potentially suffer a total deprivation of the right to be present. The factual distinction alone, however, does not warrant application of a different standard of analysis to allegations of constitutional error. Rather, the Supreme Court's decision in *Fulminante* dictates that harmless error analysis governs the present case.

In *Fulminante*, the Supreme Court segregated those cases in which harmless error analysis does not apply from the cases in which harmless error analysis is appropriate. *Fulminante*, —— U.S. at —— ——, 111 S.Ct. at 1263–65. Harmless error analysis does not apply when there is a "structural defect[ ] in the constitution of the trial mechanism." *Id.* at —— — ——, 111 S.Ct. at 1263–65. The *Fulminante* Court cited examples of structural defects as total deprivations of the right to counsel and partial or biased trial judges.[6] *Id.* at —— — ——, 111 S.Ct. at 1263–65. Conversely, the *Fulminante* Court emphasized

---

ment, the *Rose* Court relied on *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), and explained that *Rushen* stands for the proposition that harmless error applies to denial of the right to be present at trial. *Id.*

6. The *Fulminante* Court also noted that violations of the right to self-representation, a public trial, and unlawful exclusion of members of the defendant's race from a grand jury may not be evaluated under harmless error analysis. *Fulminante*, —— U.S. at ——, 111 S.Ct. at 1265.

that harmless error analysis applies where a trial error—such as deprivation of the right to be present—occurs. *Id.* at —– —, 111 S.Ct. at 1263–65.

Under *Fulminante*, federal law is clear: harmless error analysis applies to allegations of error regarding denial of the federal constitutional right to be present at trial. Accordingly, the court of appeals did not err in determining that the harmless error doctrine should govern Luu's allegations of constitutional error. We thus consider whether the court of appeals correctly found that any error in the absence of an interpreter during closing arguments and the giving of jury instructions did not require reversal of Luu's convictions.

### III.

■ We begin by assuming that, for the purposes of our discussion, the Sixth and Fourteenth Amendments guarantee defendants a right to be present during closing arguments and the giving of jury instructions.[7] We note that the Confrontation Clause of the Sixth Amendment guarantees the right to be present at trial to secure the opportunity for full and effective cross-examination of witnesses. *Kentucky v. Stincer,* 482 U.S. 730, 744 n. 17, 107 S.Ct. 2658, 2667 n. 17, 96 L.Ed.2d 631 (1987).

The Due Process Clause of the Fourteenth Amendment guarantees defendants a "right 'to be present ... whenever [their] presence has a relation, reasonably substantial, to the fulness of [their] opportunity to defend against the charge.' " *Id.* at 745, 107 S.Ct. at 2667 (quoting *Snyder,* 291 U.S. at 105–06, 54 S.Ct. at 332); *Gagnon,* 470 U.S. at 526, 105 S.Ct. at 1484. Thus, the "privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.' " *Stincer,* 482 U.S. at 745, 107 S.Ct. at 2667 (quoting *Snyder,* 291 U.S. at 106–07, 54 S.Ct. at 332); *Snyder,* 291 U.S. at 106, 54 S.Ct. at 332. Due Process only "requires that a defendant be allowed to be present 'to the extent that a fair and just hearing would be thwarted by his absence.' " *Stincer,* 482 U.S. at 745, 107 S.Ct. at 2667 (quoting

*Snyder,* 291 U.S. at 107–08, 54 S.Ct. at 333); *Gagnon,* 470 U.S. at 526, 105 S.Ct. at 1484; *Snyder,* 291 U.S. at 107–08, 54 S.Ct. at 333.

With these guarantees in mind, harmless error analysis requires evaluation of whether the alleged error "was harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828; *see Fulminante,* — U.S. at —, 111 S.Ct. at 1266.

There is no evidence that the absence of an interpreter interfered with Luu's ability to cross-examine witnesses. Nor is there any indication in the record that the absence of an interpreter during closing arguments and the giving of jury instructions compromised the basic fairness of the trial. What the record shows is the district court acceded to the request of Luu's attorney to instruct the jury on the interpreter's absence from the closing phase of trial and to proceed with closing argument. In light of the entire record, we conclude under these facts that any error suffered by Luu was harmless beyond a reasonable doubt.

For the foregoing reasons, we affirm the court of appeals.

QUINN, J., specially concurs.

LOHR and KIRSHBAUM, JJ., dissent.

Justice QUINN specially concurring:

I specially concur in the judgment. While I acknowledge that there may be circumstances where the absence of an interpreter to translate for a defendant during the critical phases of a trial so infects the structural integrity of the trial as to defy analysis under the harmless error standard, I am satisfied that those circumstances are not present here. In my view, both *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), and *Arizona v. Fulminante,* — U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), provide support for applying harmless error analysis to the facts of this case.

Although the defendant was physically present during all phases of the trial and

---

7. *See Larson,* 911 F.2d at 394.

was represented by counsel, for reasons undisclosed by the record the defendant was not afforded the benefit of an interpreter's presence during final arguments. The final arguments, however, were conducted in the absence of the interpreter at the express request of defense counsel and after the court, again at the express request of defense counsel, informed the jury that the interpreter was not present "for reasons that we've not been informed of."

There is no basis in this case for assuming that the interpreter's absence somehow impaired defense counsel's ability to object to any unsupported statements of the prosecutor during the prosecution's closing or impaired defense counsel's ability to effectively respond to the prosecutor's summation. The evidentiary phase of the case had ended, and the only remaining task for defense counsel was to argue the case to the jury—a task that is uniquely within the control of defense counsel and is limited by the evidence, the reasonable inferences therefrom, and the jury instructions.

It would be utter speculation were this court to conclude that the interpreter's absence during summation somehow deprived defense counsel of information which, but for the interpreter's absence, would probably have been used by defense counsel either to object to or to rebut some aspect of the prosecution's summation. It would be even more speculative were this court to presume that the jury, notwithstanding the trial court's statement about the interpreter, viewed the interpreter's absence as evidence of the defendant's guilt.

Although it was error for the trial court to proceed with final arguments in the absence of the interpreter, I am convinced beyond a reasonable doubt that the error was harmless under the particular facts of this case. I accordingly specially concur in the judgment.

Justice LOHR dissenting:

The majority affirms the holding of the Colorado Court of Appeals in *People v. Luu,* 813 P.2d 826 (Colo.App.1991), that Minh Luu's federal constitutional right to be present at his trial was not violated by the absence of an interpreter during closing arguments and the giving of jury instructions. In so doing, the majority holds that under *Arizona v. Fulminante,* —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), it is compelled to find that allegations of denial of the right to be present at trial are subject to harmless error analysis. Maj. op. at 274. Because I conclude, on the contrary, that the basic principles articulated in *Fulminante* lend greater support to the view that the denial of a defendant's right to be present during closing arguments and the giving of jury instructions is not subject to harmless error analysis, and because I believe that Luu was denied his constitutional right to be present at his trial, I respectfully dissent.

I

Luu, who is Vietnamese, was charged with several serious crimes, and the majority concedes that he did not understand or speak English at the time of trial. A Vietnamese interpreter was appointed by the court to translate the proceedings for Luu and to help him communicate with his attorneys. In December of 1987, a jury trial commenced and continued for several days. Luu was present throughout the trial, and his interpreter was present during pre-trial motions, voir dire, opening arguments and the presentation of evidence. Luu's interpreter, however, was not present in the courtroom during instructions to the jury, closing arguments, and the return of the jury's verdicts. Before closing arguments and outside the presence of the jury, Luu's attorney expressed some concern to the court that Luu's interpreter was not present, but stated:

Very briefly, Judge. Mr. Luu's interpreter is not present. However, we are prepared to proceed. I would just maybe ask the court to indicate that, you know, I don't want the jury sitting in there. I don't think the interpreter is necessary for me to make my closing argument. I could be wrong about that. I think we prefer that we get this thing to the jury. I don't think it's going to affect Mr. Luu's right in this case. That is my

personal opinion but I would perhaps ask the court to explain why the interpreter isn't here because I think if the jury sees they are not here there may be problems.

Shortly thereafter, he added "I don't want the jury speculating why someone [i.e., Luu's interpreter] isn't present when they have seen him throughout the trial." Accordingly, just before closing arguments, the court told the jury "I want to indicate that the gentleman who had been seated at the defense table during part of the trial, Mr. Nguyen, is for reasons that we've not been informed of not able to be here. So he's not here at this time." The jury subsequently returned its verdicts that Luu was guilty of two counts of second-degree kidnapping, two counts of aggravated robbery, and one count each of first-degree burglary, second-degree burglary, conspiracy, and theft. The jury was not polled, and the court later sentenced Luu to a total of 120 years imprisonment based on the imposition of consecutive sentences for some of the various individual convictions.

The court of appeals affirmed the judgment of conviction, but in a modified opinion it set aside the sentence and remanded the case for resentencing. *Luu,* 813 P.2d at 829. Luu filed a petition for certiorari, and we granted certiorari on the issue of whether the court of appeals erred in applying harmless error analysis to determine whether the defendant's conviction should be reversed because the defendant's interpreter was not present during closing arguments and the reading of jury instructions.

## II

Whether the majority is correct that "[u]nder *Fulminante,* federal law is clear:

harmless error analysis applies to allegations of error regarding denial of the federal constitutional right to be present at trial," maj. op. at 275, depends upon how much it is appropriate to read into a parenthetical description of a case contained in a string citation of sixteen cases. That is, the Court in *Fulminante* never states: "Harmless error analysis applies to all cases in which the issue is the denial of a defendant's right to be present at trial." Instead, the Court states that "the Court has applied harmless error analysis to a wide range of errors and has recognized that most constitutional errors can be harmless. *See, e.g., . . . Rushen v. Spain,* 464 U.S. 114, 117–118, and n. 2 [104 S.Ct. 453, 454–455, and n. 2, 78 L.Ed.2d 267] . . . (1983) (denial of a defendant's right to be present at trial). . . ." *Fulminante,* ——— U.S. at ———, 111 S.Ct. at 1263 (citations and parenthetical descriptions of fifteen cases omitted).[1] It is thus debatable, to say the least, whether the Court meant that the error involved in *Rushen* is one example of an error that can be harmless, or that any violation of the right to be present at trial is subject to harmless error analysis. If the Court meant the former, then the specific facts of *Rushen* are material,[2] but if the Court meant the latter, then the specific facts of *Rushen* are immaterial, and all that matters is that the defendant in this case alleges that his right to be present at trial has been violated. The correct meaning emerges, however, when we look beyond the string citation in *Fulminante* and apply the basic principles thereafter articulated in *Fulminante* for determining in a given case whether a defendant's alleged denial of his constitution-

---

**1.** A similar parenthetical description capsulizing *Rushen* appears in *Rose v. Clark,* 478 U.S. 570, 576, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986) ("*Rushen v. Spain,* 464 U.S. 114, 118, 104 S.Ct. 453, 455, 78 L.Ed.2d 267 (1983) (*per curiam*) (denial of right to be present at trial)") in a six-case string citation in support of the proposition that the harmless error principle "has been applied to a wide variety of constitutional errors." *Id.*

**2.** In *Rushen,* the Court disagreed with a Ninth Circuit Court of Appeals' conclusion that "an

unrecorded *ex parte* communication between trial judge and juror can never be harmless error," *Rushen v. Spain,* 464 U.S. 114, 117, 104 S.Ct. 453, 455, 78 L.Ed.2d 267 (1983) (per curiam), while, at the same time, it assumed (without deciding) that an undisclosed and off-the-record *ex parte* communication between a trial judge and a juror during trial implicates a defendant's constitutional right to be represented by counsel and his right to be present at trial. *Id.* at 117 n. 2, 104 S.Ct. at 455 n. 2.

al right is properly subject to harmless error analysis.

According to the Court in *Fulminante*, "[t]he common thread connecting these cases [which include *Rushen* as one of sixteen cases included in the immediately preceding string citation] is that each involved 'trial error'—error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, —— U.S. at ——, 111 S.Ct. at 1264. In addition, the Court's clear example of "a classic 'trial error,'" *id.*, was the admission of an involuntary confession, because such an improper admission of evidence is

> similar in both degree and kind to the erroneous admission of other types of evidence ... [and w]hen reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt.

*Id.* at ——, 111 S.Ct. at 1265.

In contrast to this classic type of trial error, where the court has the ability quantitatively to assess the effect on the jury of certain evidence presented to it in relation to other evidence also presented, a court has no way of quantitatively assessing the effect on the jury or the court of what was *not* presented to it, but perhaps might have been, if the defendant's rights had not been violated. Thus, the Ninth Circuit Court of Appeals has held that because "an accurate assessment of the prejudice resulting from unconstitutional in absentia sentencing is impossible," *Hays v. Arave*, 977 F.2d 475, 480 (9th Cir.1992), the denial of a defendant's right to be present at sentencing cannot be subject to harmless error analysis under the principles articulated in *Fulminante. Id.* Similarly, the Tenth Circuit Court of Appeals has held that the denial of a defendant's right to be present during closing arguments and jury instructions could not be harmless error because "[the] defendant was competent to stand trial ... [and the] defendant's presence might have allowed him to provide assistance to his counsel." *Larson v. Tansy*, 911 F.2d 392, 395 (10th Cir.1990).

In contrast also to *Fulminante*'s classic type of trial error the effects of which can be quantitatively assessed, a court has no way of quantitatively assessing the effect on the jury of less tangible and more subtle phenomena, such as the psychological influence on the jury of the absence of the defendant, as well as the possibility that the jury speculated about the defendant's absence in a way prejudicial to him. Thus, in *Larson*, the court also held that "aside from any assistance defendant could have given to his counsel, [the defendant's mere presence] would have been useful and would have provided more than a shadow of benefit," *id.*, and that, therefore, "[the] defendant was deprived of his due process right to exert a psychological influence upon the jury, completely aside from any assistance he might have provided to his counsel." *Id.* at 396 (stating also that there was a " 'reasonable possibility that the jury speculated adversely to the defendant about his absence from the courtroom' ") (quoting *Wade v. United States*, 441 F.2d 1046, 1050 (D.C.Cir.1971)).[3]

3. The court of appeals dealt only with the absence of Luu's interpreter during closing arguments and jury instructions, and we granted certiorari only on that issue. However, the record also reflects that Luu's interpreter was absent when the jury returned its verdicts against him, and the jury was not polled. The impact on the jury of being able to render verdicts that were not comprehensible to Luu may have been substantial. *See Lee v. State*, 509 P.2d 1088, 1094 (Alaska 1973) ("A substantial right was affected by Lee's being absent when the jury returned its verdict. Had he been present he could have insisted on a poll of the jury being taken. While the judge did ask the jury generally if this was their verdict, the members were not polled individually. Lee was deprived of the right personally to confront the jury.... The psychological distinction between a general poll in his absence, and an individual poll requiring each juror to assume the burden of his decision and affirm it in the defendant's presence is not a minor one.").

In the case before us, I see no way of "quantitatively assess[ing]," *Fulminante,* —— U.S. at ——, 111 S.Ct. at 1264, the difference between, on the one hand, the psychological influence on a jury of a trial procedure that, because of the absence of an interpreter, indicates it is of no or little importance whether the defendant can understand what is being said by counsel and the court, and on the other hand, the psychological influence on the jury of a trial procedure that, because of the physical absence of the defendant, indicates that it is of no or little importance whether the defendant is able to hear what is being said. Nor do I see any way of quantitatively assessing either the impact on the jury of statements Luu's attorney might have made in closing argument at Luu's suggestion if Luu's interpreter had been there, or the negative impact on the jury of seeing that it did not matter that Luu could not understand the closing arguments and the jury instructions. Accordingly, the denial of a defendant's right to have an interpreter present during closing arguments and jury instructions is significantly different from the classic sort of trial error envisioned by the Court in *Fulminante* in that it is not susceptible to the sort of quantitative assessment envisioned by the Court as the hallmark of harmless error analysis. I would therefore hold that the denial of the defendant's right to be present during jury instructions and closing arguments is more closely akin to a "structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself," *id.* —— U.S. at ——, 111 S.Ct. at 1265; *see Arave,* 977 F.2d at 480 (holding that one "reason why unconstitutional in absentia sentencing constitutes 'structural error' [under *Fulminante* ] is our inability to determine accurately the impact of the error on the out-

come of the proceeding"), and that, therefore, the denial of the defendant's right to be present during jury instructions and closing arguments is not properly subject to harmless error analysis.[4]

### III

Having determined under *Fulminante* that a denial of a defendant's right to be present during closing arguments and jury instructions is not subject to harmless error analysis, I turn to the issue of whether Luu's constitutional right to be present at his trial was violated in this case.

First, it is well settled in federal law that an accused enjoys a constitutional right to be present at trial. *See United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (per curiam) (recognizing that the constitutional right to be present at trial is rooted in both the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment); *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970) ("One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial."). More specifically, federal courts have recognized that a defendant has a constitutional right to be present at summations, jury instructions, and the return of the jury verdict. *See Larson,* 911 F.2d at 394 (recognizing that "a defendant [has] a constitutional right to be present at summations, jury instructions, and the return of the jury verdict"); *United States v. Fontanez,* 878 F.2d 33, 34, 35 (2nd Cir. 1989) (stating that "[t]he right to be present at all stages of one's trial constitutes a foundational principle underpinning the entire law of criminal procedure," and holding that "every criminal defendant ... [is] entitled to be present at all stages of his

---

**4.** For very similar reasons, I recently expressed the view in dissent that violations of a defendant's right to testify are also not subject to harmless error analysis. *See People v. Naranjo,* 840 P.2d 319, 329 n. 7 (Colo.1992) (Lohr, J., dissenting). That is, in contrast to the wrongful admission of a piece of evidence, a court has no way of quantitatively assessing the impact upon the jury of the failure of the jury to hear what

the defendant might have said had he testified. Furthermore, because the issue in *Rushen* was the impact on the juror of *ex parte* communications between the judge and the juror, the trial court was in a good position to assess the impact of what was said to the juror, and it is for this reason that the Court in *Fulminante* properly conceptualized *Rushen* as a case involving trial error capable of quantitative assessment.

trial," including merely the reading back of testimony to a jury during their deliberations); *Burrell v. Aaron,* 560 F.2d 988, 989 (10th Cir.1977) (per curiam) (stating that a defendant who was absent from summation, instructions, and return of a verdict "obviously had a constitutionally protected *right* to be present if he wished"), *cert. denied,* 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978).

Second, the court of appeals held, and I agree, that "although the defendant was present during closing arguments and the reading of jury instructions, ... the absence of his interpreter was tantamount to his not being present at all." *Luu,* 813 P.2d at 828. The only unresolved issue, therefore, is whether Luu effectively waived his constitutional right to have an interpreter present during closing arguments and jury instructions.

Federal courts have held that a defendant's right to be present at trial is a personal right that cannot be waived by the defendant's attorney without the defendant's knowing and voluntary consent, *United States v. Crutcher,* 405 F.2d 239, 243–44 (2nd Cir.1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969), that a defendant's right to be present at trial is a personal right that cannot be waived by the defendant's attorney, *United States v. Gordon,* 829 F.2d 119, 124–25 (D.C.Cir.1987), and, more specifically, that defense counsel cannot waive a defendant's right to be present at closing arguments and jury instructions. *See Larson,* 911 F.2d at 396. I am therefore led to agree with the court of appeals in this case that Luu's defense counsel did not have authority effectively to waive Luu's right to an interpreter during closing arguments and jury instructions. *See Luu,* 813 P.2d

at 828. Furthermore, because there is no evidence in the record to suggest that Luu himself, rather than his attorney, acquiesced in the absence of an interpreter,[5] I would hold that Luu did not effectively waive his right to be present during trial. *Cf. Larson,* 911 F.2d at 396 (holding that the defendant's silent acquiescence to his removal from the courtroom did not constitute a personal waiver of his right to be present at trial, and that "we indulge every reasonable presumption against waiver of fundamental constitutional rights and will not presume acquiescence in the loss of such rights"). Luu's constitutional right to be present during closing arguments and jury instructions was therefore violated, and he is entitled to a new trial.

Justice KIRSHBAUM dissenting.

The majority holds that under federal law, as articulated by the United States Supreme Court in *Arizona v. Fulminante,* — U.S. —, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), harmless error analysis is applicable to every case wherein a defendant demonstrates a denial of the federal constitutional right to be present at trial.[1] Op. at 275. I disagree with this reading of *Fulminante* and conclude that harmless error is not applicable in the context of this case. I therefore respectfully dissent from the majority's opinion.

In *Fulminante,* the Supreme Court affirmed a judgment of the Arizona Supreme Court holding that the admission into evidence of a coerced confession required a new trial. A bare majority of the United States Supreme Court (hereafter referred to as "the *Fulminante* majority") held that harmless error analysis was applicable to cases involving the admission into evidence of coerced confessions.[2] *Fulminante,* —

---

**5.** On the contrary, when Luu's attorney informed the court that Luu's interpreter was not present, Luu's attorney stated that he "could be wrong" about whether the interpreter was necessary and it was only his "personal opinion" that it would not affect his client's rights.

**1.** In this case it is conceded that the defendant was denied his constitutionally protected right to be present at all critical stages of trial. We are thus not concerned with questions of waiver

or whether the giving of instructions, the delivery of closing arguments and the receipt of the jury's verdict should be categorized as critical stages of the trial process.

**2.** A different majority of the Court concluded that admission of the coerced confession was not harmless beyond a reasonable doubt. Of course, the case before us does not involve a coerced confession.

U.S. at —— – ——, 111 S.Ct. at 1263–66. Four members of the Court concluded that harmless error analysis was never applicable to coerced confession cases. *Id.* at —— – ——, 111 S.Ct. at 1253–57. Given the division of the Court over this particular issue, it is especially important to review the reasons articulated by the *Fulminante* majority for the conclusion that harmless error analysis is available in this class of cases.

The *Fulminante* majority initially observes that the Court has applied harmless error analysis "to a wide range of errors and has recognized that most constitutional errors can be harmless." *Id.* at ——, 111 S.Ct. at 1263. The opinion then lists sixteen prior United States Supreme Court decisions as illustrative of the foregoing observation. Six of the cases dealt with improper jury instructions. Seven of the cases concerned issues relating to the exclusion or admission of evidence. One case dealt with improper prosecutorial comment on the defendant's failure to testify, and one case involved a denial of counsel at a preliminary hearing. The remaining case, *Rushen v. Spain,* 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), is viewed by the majority in the instant case as dispositive of the issue before us.

The *Fulminante* majority then enunciates a standard by which to judge the availability of harmless error analysis in criminal cases wherein a defendant has been denied a constitutionally protected right. The standard distinguishes between "trial errors" and "structural defects." The former term refers to errors "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante,* — U.S. at ——, 111 S.Ct. at 1264. Structural defects are "defects in the constitution of the trial mechanism" and are considered errors "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at ——, 111 S.Ct. at 1265. The *Fulminante* majority then concludes that the ad-

mission of a coerced confession constitutes a trial error and is therefore subject to harmless error analysis.

Application of this dichotomy to the issue presented here requires the conclusion that in this case the deprivation of the defendant's right to be present at this concededly critical stage of the trial is not a trial error susceptible of quantitative analysis, but rather constitutes a structural defect in the trial mechanism which by its very nature precludes harmless error analysis. Unlike cases involving evidentiary errors or errors in instructions, the absence of a defendant's presence at a critical stage of trial proceedings is rarely subject to any quantitative assessment. In the former class of cases, the record may be examined to assess the impact of the constitutional error upon the jury in light of other evidence or other instructions also considered by the jury. In such a case the record of the proceedings permits an objective determination of whether the proceedings were fair beyond a reasonable doubt. The record here, however, contains no information permitting objective assessment of the impact of the defendant's absence on the conduct of his attorney or on the jury.

As a result of the defendant's absence, his attorney had no opportunity to consider questions, concerns, observations or suggestions offered by the defendant in reaction to statements made by the prosecution during the prosecutor's initial closing argument. While the record contains the prosecutor's initial closing argument, nothing in the record permits evaluation of the defendant's reactions to that argument or the significance of any observations the defendant may have imparted to his attorney about the prosecutor's statements. In addition, the psychological effect on the jury of the defendant's inability to comprehend or comment upon this critical stage of the trial is not capable of quantitative analysis. *See Larson v. Tansy,* 911 F.2d 392, 395–96 (10th Cir.1990). Under these circumstances, it is not possible to measure the impact of this structural defect. *See Hays v. Arave,* 977 F.2d 475 (9th Cir.1992) (denial of defendant's right to be present at sen-

tencing proceeding is structural error under *Fulminante* and is not subject to harmless error analysis).

The majority here relies upon the United States Supreme Court decision in *Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983), in support of the conclusion that "allegations of denial of the right to be present at trial are scrutinized under the harmless error doctrine." Opinion at 274. *Rushen* was among those cases cited by the *Fulminante* majority as illustrative of trial errors. *Fulminante*, — U.S. at ——, 111 S.Ct. at 1263. In *Rushen*, a juror approached the trial judge on two occasions during the course of a lengthy trial with questions regarding the appropriateness of the juror's continued service. The trial judge briefly responded, but did not disclose these ex parte communications to the defendant's attorney. Upon discovering these facts after the jury had rendered its verdict, the defendant's attorney unsuccessfully moved for a new trial. On appeal, the California Court of Appeals affirmed the conviction, concluding that the ex parte communications constituted harmless error.

The defendant sought habeas corpus relief from the federal courts. A federal district court ordered the defendant's release, concluding that the absence of a contemporaneous record made it impossible to apply harmless error analysis. *Spain v. Rushen*, 543 F.Supp. 757, 770 (N.D.Cal. 1982). On appeal, the Ninth Circuit Court of Appeals affirmed, holding that such an unrecorded ex parte communication could never constitute harmless error. *Spain v. Rushen*, 701 F.2d 186 (9th Cir.1983) (mem.).

In *Rushen*, six members of the Supreme Court, in a per curiam opinion, reversed the judgment of the Ninth Circuit Court of Appeals. The per curiam opinion "emphatically" disagreed with the Ninth Circuit's conclusion that an unrecorded ex parte communication between a trial judge and a juror can never be subject to harmless error analysis. *Rushen*, 464 U.S. at 117, 104 S.Ct. at 455. In a footnote the Court, having observed that the case before it implicated both right to counsel and right of presence issues, stated that "[t]hese rights,

as with most constitutional rights, are subject to harmless-error analysis, unless the deprivation, by its very nature, cannot be harmless." *Id.* at 117–18 n. 2, 104 S.Ct. at 455 n. 2 (citations omitted). This statement recognizes that some deprivations of the right to be represented by counsel and the right to be present during critical stages of trial proceedings are by their very nature *not* amenable to harmless error analysis, in view of this language, I cannot agree with the majority's view that *Rushen* stands for the proposition that in all circumstances a deprivation of the right to be present at a critical stage of trial proceedings must be scrutinized under the harmless error doctrine.

In this case, the defendant was denied his fundamental right to be present at a critical stage of the criminal proceedings brought against him. The record does not contain any information that would permit a quantitative assessment of the impact of such deprivation on the fairness of the deliberative process. In my view, *Fulminante* requires the conclusion that in these circumstances the error must be considered a structural defect and is not susceptible to harmless error analysis. I therefore would reverse the judgment of the Court of Appeals and direct that court to remand the case to the trial court for a new trial.