**David Lewis RICE, Petitioner–Appellee,**

v.

**Tana WOOD, Superintendent, Respondent–Appellant.**

**David Lewis RICE, Petitioner–Appellant,**

v.

**Tana WOOD, Superintendent, Respondent–Appellee.**

Nos. 93–99011, 93–99012.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 18, 1994.

Decided Jan. 4, 1995.

Order Granting Rehearing En Banc April 10, 1995.

Thomas J. Young, Asst. Atty. Gen., Corrections Div., Olympia, WA, for respondent-appellant, cross-appellee.

Robert S. Mahler and Peter Offenbecher, Federal Public Defenders, Seattle, WA, for petitioner-appellee, cross-appellant.

Before: WALLACE, Chief Judge, D.W. NELSON and LEAVY, Circuit Judges.

Opinion by Judge Leavy; Partial Concurrence and Partial Dissent by Judge Wallace.

LEAVY, Circuit Judge:

Following a jury trial in Superior Court for King County, Washington, David Lewis Rice ("Rice") was found guilty of four counts of aggravated first degree murder and sentenced to death. The Supreme Court of Washington upheld Rice's conviction and sentence on direct appeal, and denied both of his subsequently filed Personal Restraint Petitions ("PRPs"). Rice filed a petition for writ of habeas corpus in federal district court, alleging numerous errors at both the guilt and penalty phases of his trial. The district court denied relief as to all of Rice's claims relating to his conviction, granted the petition with respect to one of his sentencing claims, and declined to reach the merits of the remaining issues. We affirm in part, reverse in part, and remand for further proceedings.

## FACTS AND PRIOR PROCEEDINGS [1]

On Christmas Eve 1985, guests arrived at the home of Seattle attorney Charles Gold-mark to find a grisly sight: Charles, his wife, Annie, and their two sons, Colin and Derek, had been viciously assaulted and left to die. The coroner pronounced Annie dead at the scene; Charles, Colin, and Derek all succumbed from their injuries over the next five weeks. On December 26, 1985, the police arrested Rice on suspicion of having committed the Goldmark crimes. After being advised of his *Miranda* rights and consulting with an attorney, Rice signed a waiver and made a full, tape-recorded confession.

The State of Washington charged Rice with four counts of aggravated first degree murder, and the prosecution gave notice that it intended to seek the death penalty. Rice entered a general plea of not guilty and a special plea of not guilty by reason of insanity. Notwithstanding the second plea, defense counsel conceded that Rice was competent to stand trial.

The trial court bifurcated the criminal proceedings into guilt and penalty phases. During the former, Rice did not seriously contest the fact that he had killed the Goldmarks; rather, he argued that he was not responsible for the murders because he had been insane at the time of the killings. The jury rejected Rice's insanity defense and returned a verdict of guilty on all four counts of aggravated first degree murder, based on its findings that Rice had committed the murders as part of a common scheme during the course of a robbery and in order to conceal the commission of that robbery.

The penalty phase of the trial then began before the same jury. During the course of their deliberations, and while Rice was absent, the jurors asked that the tape recording of Rice's confession be replayed. Defense counsel made no objection and, without consulting Rice, purported to waive his right to be present.[2] The court ordered the tape to be replayed and the jury resumed its deliberations. When the jury announced that it had

---

**1.** Most of the underlying facts are not in dispute, and those facts, along with the state court proceedings, have been set out in detail in the Supreme Court of Washington's prior published opinions. *See In re Rice,* 118 Wash.2d 876, 879–84, 828 P.2d 1086, 1089–91, *cert. denied,* —— U.S. ——, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992); *State v. Rice,* 110 Wash.2d 577, 580–97, 757 P.2d 889, 892–900 (1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 707 (1989).

**2.** Neither the prosecutor nor counsel for the defense were present in the courtroom during the replaying of the tape.

reached a verdict, however, the court learned from jail officials that Rice had ingested a "tobacco substance"[3] and had been rushed to the hospital for treatment. Upon being told that Rice could not be returned to the courtroom for at least two hours, the trial judge asked counsel whether they would agree to permit the jury to return its verdict in Rice's absence. The prosecution indicated it had no objection, and defense counsel purported to waive Rice's right to be present. The court then accepted the jury's announcement that leniency was not merited and polled the jury.

Rice appealed to the Supreme Court of Washington, which affirmed both his conviction and sentence. *State v. Rice*, 110 Wash.2d 577, 757 P.2d 889 (1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 707 (1989). Rice then filed a PRP, which the Supreme Court of Washington denied. Shortly thereafter, Rice filed a petition for writ of habeas corpus in federal district court. Rice amended the petition, then filed a second PRP in state court. The district court stayed the habeas proceedings pending the outcome of Rice's second PRP. When the Washington high court again denied relief, *In re Rice*, 118 Wash.2d 876, 828 P.2d 1086, *cert. denied*, —— U.S. ——, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992), Rice filed a second amended habeas petition.

The district court granted the petition, holding that Rice could not and did not waive his right to be present, and the trial court therefore erred by accepting the return of the jury's death verdict in Rice's absence. By amended order, the district court also rejected all of Rice's guilt phase claims and declined to reach the merits of the remaining penalty phase claims.

Tana Wood ("Wood"),[4] Superintendent of the Washington State Penitentiary ("WSP"), timely appealed, arguing that Rice is not entitled to habeas relief because he impliedly waived his right to be present by attempting suicide (i.e., by swallowing the tobacco substance); and, in the alternative, any resultant error was harmless. In addition, Wood asks

that we remand the case and direct the district court to decide each of Rice's remaining penalty phase claims. Finally, Wood contends that the district court improperly denied her motion to strike allegedly unexhausted claims in Rice's habeas petition as well as those claims that either were, or would have been deemed to be, procedurally barred by the Supreme Court of Washington. Rice, now a WSP death row inmate, timely cross-appealed, arguing, *inter alia*, that the district court erred by denying his guilt phase claims without either conducting an evidentiary hearing or articulating a basis for its decision.

## ANALYSIS

### 93–99011 (DIRECT APPEAL)

#### Absence from Return of Penalty Phase Verdict

As noted, the district court held that Rice could not and did not waive his right to be present at trial. Wood's direct appeal therefore stands or falls largely on the answer to one question: Could and did Rice waive his right to be present when the jury returned its verdict during the penalty phase of his trial? Put another way, was Rice's mental state such that he could have voluntarily, knowingly, and intelligently waived that right?

#### Standard of Review

■ The district court's determination that Rice could not and did not waive his right to be present at trial constitutes a mixed question of law and fact which we examine *de novo*. *See Campbell v. Wood*, 18 F.3d 662, 672 (9th Cir.) (en banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994). We review for clear error any factual findings made by the district court. *See Thomas v. Brewer*, 923 F.2d 1361, 1364 (9th Cir.1991) (citing *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989)). With respect to our examination of the district court's factual findings, we note that

---

**3.** The tobacco substance turned out to be the contents of several packs of cigarettes, which Rice boiled in water and drank.

**4.** By order filed March 1, 1994, we substituted respondent Tana Wood for the original respondent, James Blodgett. *See* Fed.R.App.P. 43(c)(1).

"[t]he ultimate issue of voluntariness is a legal question requiring independent federal determination[,]" *i.e.*, the usual presumption of correctness of state court findings under 28 U.S.C. § 2254(d) does not apply. *Campbell v. Wood*, 18 F.3d at 672.

### Discussion

■■■ A criminal defendant charged with a felony has the right to be present at every stage of his trial.[5] *Campbell v. Wood*, 18 F.3d at 671. As the Supreme Court noted long ago, this right extends from "the empanelling of the jury [to] the reception of the verdict[.]" *Diaz v. United States*, 223 U.S. 442, 455, 32 S.Ct. 250, 254, 56 L.Ed. 500 (1912). A defendant can waive that right, however, provided he does so voluntarily, knowingly, and intelligently. *Campbell v. Wood*, 18 F.3d at 671. Such a waiver need not be express; it may be implied, *e.g.*, by a showing that the defendant "knowingly and voluntarily fail[ed] to appear for trial." *United States v. Houtchens*, 926 F.2d 824, 827 (9th Cir.1991).

■■■ Wood argues that Rice knowingly and voluntarily failed to appear—and thereby impliedly waived his right to be present at trial—when he attempted suicide by drinking a poisonous substance which, but for timely medical intervention, might have killed him. The Supreme Court of Washington adopted this line of argument, concluding that, because "Rice's suicide attempt was fully voluntary . . . Rice's waiver was both knowing and voluntary." *State v. Rice*, 110 Wash.2d at 619–20, 757 P.2d at 912 (footnote omitted).

One of the difficulties with this conclusion is that it is based on an assumption, *viz.*, that Rice drank the tobacco substance in an attempt to kill himself. While that assumption may not be unreasonable under the circumstances, the record does not reflect that the State of Washington ever conducted a factfinding hearing to determine just why Rice did what he did, or what his mental state was at the time. *See, e.g., State v. Rice*, 110 Wash.2d at 635–37, 757 P.2d at 921 (Utter, J., dissenting). Certainly at the time the trial court decided to proceed without him, no one other than Rice knew whether he had actually tried to kill himself or had simply (and accidentally) overdosed on a homemade version of liquid nicotine.[6]

The only real evidence in the record concerning Rice's state of mind at the time he ingested the tobacco substance comes from the reports and testimony of the three psychiatrists who examined Rice pursuant to the district court's order of December 4, 1989.[7] While the psychiatrists disagreed about the degree of Rice's competence and the general state of his mental health during the relevant time period of June 1986 (i.e., at the time of the jury's deliberations), all three doctors agreed that Rice suffered from a paranoid delusional disorder, with one psychiatrist unequivocally stating that Rice's mental illness substantially impaired his ability to make reasoned choices and to understand the consequences of those choices, including any waiver of rights.

Although we ordinarily defer to a state court's factual findings if adequately sup-

---

5. This right derives generally from the Confrontation Clause of the Sixth Amendment, as well as from the Due Process Clauses of both the Fifth and Fourteenth Amendments. *Campbell v. Wood*, 18 F.3d at 671. While the Confrontation Clause obviously protects a defendant's right to face his accusers by, *e.g.*, cross-examining witnesses, *Kentucky v. Stincer*, 482 U.S. 730, 737–39, 107 S.Ct. 2658, 2662–64, 96 L.Ed.2d 631 (1987), it has been held to apply to every stage of a trial. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). Due Process, on the other hand, protects a defendant's right to be present "at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. at 745, 107 S.Ct. at 2667.

6. At least until the time of his arrest, Rice drank liquid nicotine as a substitute for smoking. *See State v. Rice*, 110 Wash.2d at 581–82 & n. 1, 757 P.2d at 892 & n. 1.

7. That order instructed the doctors to determine, *inter alia*, "[w]hether on June 9 and June 10, 1986 [Rice] suffered from a mental illness which substantially impaired his: (a) ability to make a reasoned choice among alternatives which may have been presented to him during the penalty phase of his trial; and (b) ability to understand the consequences of whatever choice he made; and (c) ability to understand the consequences of any waiver of rights which may have occurred[.]" SER 89.

ported by the record, *see* 28 U.S.C. § 2254(d), no such state court findings exist here. Moreover, "[t]he ultimate issue of voluntariness is a legal question requiring independent federal determination." *Campbell v. Wood,* 18 F.3d at 672. In the light of the evidence cited above, we cannot say that the district court clearly erred by finding that Rice suffered from a mental illness during the penalty phase of his trial that effectively precluded him from being able to waive the right to be present for the jury's return of the verdict of death.[8]

■ Wood argues, however, that even if the trial court erred by accepting the jury's verdict during the penalty phase of the trial without Rice having been present, the mistake was only a "trial error" which, in the absence of a showing of actual and substantial prejudice, must be deemed to have been harmless. Rice counters by insisting that his absence involved not a trial error, but a "structural defect" in the criminal proceeding that is not subject to harmless error analysis. For the reasons which follow, we conclude that Rice's absence constituted a structural defect in the proceedings.

In *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court distinguished trial error from structural defect in the context of constitutional rights violations. The Court defined the former as an "error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08, 111 S.Ct. at 1264. As for the latter, the Court stated that a "structural defect affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. at 1265.

In the context of habeas corpus, therefore, an appellate court should determine whether the constitutional trial error "had substantial and injurious effect or influence in determining the jury's verdict." [*Brecht v. Abrahamson,* — U.S. —, —] 113 S.Ct. [1710,] 1722 [123 L.Ed.2d 353] [(1993)] (internal quotations omitted). This harmless error analysis applies only to trial errors and not to structural defects. *Id.* [at —, 113 S.Ct.] at 1717[.] Because the latter defects infect the entire trial process, they defy harmless error analysis. Consequently, structural defects require automatic reversal. *Id.* *Bland v. California Dep't of Corrections,* 20 F.3d 1469, 1478 (9th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 357, 130 L.Ed.2d 311 (1994).

We have found structural defects in such matters as the failure to substitute counsel, *Bland v. California Dep't of Corrections,* 20 F.3d at 1479, and the giving of an erroneous jury instruction on a nonexisting theory of criminal law, *Suniga v. Bunnell,* 998 F.2d 664, 670 (9th Cir.1993). *See also United States v. Leon–Leon,* 35 F.3d 1428, 1433 (9th Cir.1994) (Ferguson, J., arguing in dissent that holding of deportation hearing by telephone without evidence that alien consented to not being physically present at hearing constituted structural defect). *Cf. Martel v. County of Los Angeles,* 34 F.3d 731, 734 (9th Cir.1994) (denial of discovery in civil trial constituted equivalent of structural defect).

Wood seeks to distinguish the above by citing to our holding in *Boardman v. Estelle,* 957 F.2d 1523 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 297, 121 L.Ed.2d 221 (1992), that a trial court's denial of the right to allocution at sentencing "is not a fundamental defect and so may be treated as harmless." *Id.* at 1530. This argument ignores the fact that *Boardman* dealt not with the right to be present, but rather with the right of a defendant who is already present. Moreover, we expressly distinguished *Boardman* in a later decision in which we noted that a defendant's right to be present is more fundamental than the right to allocution.

---

8. Accordingly, we need not and do not reach the merits of the question of whether a defendant who voluntarily overdoses on a drug in an apparent suicide attempt during the course of his trial must be deemed to have waived his right to be present at trial. *But see United States v. Latham,* 874 F.2d 852, 858 (1st Cir.1989) (voluntary ingestion of drug was not "voluntary" in same sense as voluntary waiver of rights) (cited favorably by this court in *United States v. Houtchens,* 926 F.2d at 828, as example of when absence from trial is not voluntary).

*Hays v. Arave,* 977 F.2d 475, 480 n. 10 (9th Cir.1992). In *Hays* we expressly declared that "unconstitutional *in absentia* sentencing is a 'structural' error and that a sentence resulting from such a proceeding cannot be affirmed on the basis of harmless error." 977 F.2d at 479.

Absence from the return of a death verdict is not only closely analogous to absence from sentencing; if anything, it states an even stronger case for applying the structural defect standard. Because "[t]he law of Washington ... allows any one juror to set aside the death penalty[,]" *Mak v. Blodgett,* 970 F.2d 614, 621 (9th Cir.1992) (per curiam), *cert. denied,* —— U.S. ——, 113 S.Ct. 1363, 122 L.Ed.2d 742 (1993), it was critically important that the return of the death verdict and the polling of the jurors take place in Rice's presence, where each juror would have to look Rice in the eye and reaffirm his or her jury room vote by declaring in open court that Rice did not deserve to live. As noted in *United States v. Taylor,* 507 F.2d 166 (5th Cir.1975), "[V]otes taken in the jury room prior to being returned in court are preliminary.... Jurors are not bound by votes in the jury room and remain free to register dissent even after the verdict has been announced, though before the verdict is recorded." *Id.* at 168 (internal citations omitted).[9]

■ Under the facts of this case, the trial court's decision to proceed in Rice's absence constituted a structural defect in the criminal proceedings that is not subject to harmless error analysis. Accordingly, we conclude that the district court did not err by ruling as it did on this issue.[10]

### Motion to Strike

Wood next argues that the district court erred by denying her motion to strike.[11] Wood had asked the district court to strike numerous claims and subclaims set out in Rice's habeas petition, arguing that some of those issues were unexhausted because they had not been fairly presented to the state courts (the so-called "Group A" claims), while others had been held by the Supreme Court of Washington to have been procedurally barred (the "Group B" claims). The district court ruled that all of Rice's claims were

---

**9.** The polling of the jurors in Rice's absence was in the form of two questions asked of each juror: First, "[Name], is this your individual verdict?" And second, "Is this the verdict of the jury?" Each juror answered yes to both questions.

Until the twelfth juror answered the first question in the affirmative, none of the preceding jurors could have answered the second question, except as a report of what the vote had been in the jury room. We are therefore left to speculate as to what effect the answer of the first, and each succeeding, juror to the second question might have had on each of the subsequent jurors' answers to that first question when it was posed to them.

We cannot measure the jurors' answers against the weight of the evidence to decide whether it was easier for each juror to answer "yes" to the first question in Rice's absence, particularly when each succeeding juror knew that it was being reported that his or her answer would be "yes."

**10.** Having granted relief to Rice on one of his penalty phase claims, the district court elected not to reach the merits of the remaining penalty phase issues. Citing *Clisby v. Jones,* 960 F.2d 925 (11th Cir.1992) (en banc), a case in which the Eleventh Circuit exercised its supervisory powers to issue a prospective rule requiring district courts to dispose of all claims for relief raised in habeas petitions, Wood now asks that we do likewise and remand the case to the dis-

trict court with instructions to consider each of Rice's remaining penalty phase claims.

While Wood's request would be reasonable if we were reversing the district court's holding, our affirmance of the district court's granting of the writ on one sentencing issue effectively renders unnecessary any further consideration by the district court of the remaining penalty phase issues. *Cf. Blazak v. Ricketts,* 971 F.2d 1408 (9th Cir.1992) (per curiam) (declining to apply *Clisby* to case in which district court granted writ on one guilt phase issue without deciding all remaining guilt and penalty phase claims), *appeal decided,* 1 F.3d 891 (1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1866, 128 L.Ed.2d 487 (1994). Accordingly, we decline on the facts of this case to exercise our supervisory powers to formulate a rule similar to that announced in *Clisby.*

**11.** Rice contends that the district court's ruling on Wood's motion to strike is not final but only interlocutory, *see Harvey Aluminum v. International Longshoremen's & Warehousemen's Union,* 278 F.2d 63, 64 (9th Cir.1960) (per curiam), and that a motion to dismiss rather than a motion to strike is the proper vehicle for raising claims of nonexhaustion, anyway. *See White v. Lewis,* 874 F.2d 599, 602–03 (9th Cir.1989). Because judges are to "be given 'flexibility' in dealing with habeas petitions[,]" *id.* at 602, we deem the district court's ruling to be final for purposes of this appeal and elect to reach the merits of this issue.

properly before it and denied the motion. On appeal Wood recites those same facts and legal issues in footnote 16 of her opening brief.

### Standard of Review

 We ordinarily review for an abuse of discretion a district court's ruling on a motion to strike. *Golden Gate Hotel Ass'n v. City & County of San Francisco*, 18 F.3d 1482, 1485 (9th Cir.1994). However, because the district court denied the motion by holding that the claims were all ripe for review, we elect to treat that ruling as a determination that all of the claims in Rice's habeas petition had been exhausted in state court. Such a determination is examined *de novo*. *See Harris v. Pulley*, 885 F.2d 1354, 1370 (9th Cir.1989) (as amended), *cert. denied*, 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990).

### Discussion

"To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts.... [A] federal claim is fairly presented if the petitioner has described the operative facts and legal theory upon which his claim is based." *Henry v. Estelle*, 33 F.3d 1037, 1040 (9th Cir.1994) (per curiam) (amending and superseding prior opinion) (citations and internal quotation omitted).

 From our review of the record we conclude that all of the Group A claims, which represent a mixed bag of guilt and penalty phase issues, were fairly presented to the state courts, albeit admittedly not in language identical to that presented to the district court. With respect to these claims, Wood appears to make the mistake of requiring an exact correlation between the pleadings in both state and federal court. This is not the law. *See, e.g., Vasquez v. Hillery*, 474 U.S. 254, 257–58, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986) (federal habeas claims

deemed exhausted so long as same general facts and substance of legal issues fairly raised in state court).

As for the Group B claims, all of which involve penalty phase issues, we need not decide whether they are subject to review in federal court because we affirm the district court's grant of relief on one of Rice's penalty phase claims. *See* note 10, *supra*. In the light of the above, we hold that the district court did not err by viewing the Group A issues as being properly before it and denying the motion to strike.

### 93–99012 (CROSS–APPEAL)

### Evidentiary Hearing

 In his cross-appeal, Rice asserts a single issue, *viz.*, that the district court erred by disposing of his guilt phase claims without holding an evidentiary hearing on any of them. We review for an abuse of discretion a district court's decision not to conduct an evidentiary hearing in a habeas proceeding. *Swan v. Peterson*, 6 F.3d 1373, 1384 (9th Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 479, 130 L.Ed.2d 393 (1994).

"A habeas petitioner is entitled to an evidentiary hearing to a claim if (1) the petitioner's allegations, if proved, would entitle him to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." *Hendricks v. Vasquez*, 974 F.2d 1099, 1103 (9th Cir.1992) (citation and internal quotation omitted). With respect to the second prong of this test, we note that Rice never received an evidentiary hearing in state court on any of his guilt phase claims.[12] As for the first prong, we conclude that Rice's allegations with respect to three of his claims, if proved, could entitle him to relief.

 Rice's principal contention is that his counsel was ineffective by, *inter alia*, failing to determine Rice's mental competency before allowing him to confess; neglecting to

---

**12.** That does not mean, however, that the Supreme Court of Washington did not examine the underlying record in the case. In its unpublished Order Dismissing [Rice's First] Personal Restraint Petition and Denying Related Motions, filed August 3, 1989, the majority reviewed at length several subissues of Rice's claim that he had received ineffective assistance of trial coun-

sel. SER 26–36. In addition, the Washington high court's subsequent majority opinion concerning Rice's second PRP devoted considerable attention to the claim that the State had wrongfully withheld, and Rice's attorneys had inexcusably failed to discover, evidence relevant to his mental condition. *In re Rice*, 118 Wash.2d at 887–93, 828 P.2d at 1093–96.

advise Rice not to confess without a lawyer being present; permitting Rice to visit someone at the police station where a detective was present and recorded incriminating statements made by Rice; allowing and encouraging Rice to speak with the press prior to trial; failing to discover exculpatory psychiatric evidence; and not seeking to exclude certain evidence, e.g., Rice's taped confession. Rice's second key argument is that he was improperly coerced to take a psychological evaluation test without counsel being present and without being told that the results could be used against him at trial (which they were). Finally, Rice contends that a pretrial mental examination that produced arguably exculpatory evidence (viz., that Rice suffered from a paranoid delusional disorder, subsequently confirmed by two other examining psychiatrists) constituted *Brady* material which the prosecution unlawfully withheld from the defense.[13]

Although the Supreme Court of Washington discussed each of these points (as well as numerous others) in at least one of its dispositions of Rice's two PRPs, none of the high court's conclusions with respect to these claims are based on undisputed facts. For example, there has never been an evidentiary hearing to determine exactly what happened, and what Rice or his attorney said, during their private meeting before Rice agreed to waive his right to remain silent and confessed to police officers *without* counsel being present. Moreover, while it is uncontroverted that Rice was subjected to "uncomfortable" conditions as a means to force him to take the psychological evaluation test, it is unclear to what degree those conditions went, and it is a disputed question of fact whether Rice was warned, either that the test results could be used against him or that he was entitled to have counsel present.

With respect to the first argument, a defendant must demonstrate that counsel's actions were deficient and that the deficiency prejudiced the defendant. To demonstrate deficiency, the defendant must show that counsel's actions were out-

side the wide range of professionally competent assistance. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Hendricks v. Vasquez,* 974 F.2d at 1109 (citations and internal quotations omitted).

Where, as here, we cannot determine from the record whether counsel's actions and inactions were either deficient or merely unsuccessful strategic choices; and, we are unable to tell whether or not that performance, if deficient, had any probable effect on the outcome of the trial; we must remand for an evidentiary hearing on that claim. *See id.* at 1109–10 (remanding for evidentiary hearing on ineffective assistance of counsel claim pertaining to both guilt and penalty phases of trial). Because we conclude that Rice's claims regarding his allegedly coerced psychological evaluation test and the purported *Brady* material suffer from the same infirmities, we must remand to the district court for it to hold an evidentiary hearing on those issues.

### CONCLUSION

Because we find no merit to any of the remaining arguments presented in these appeals, we AFFIRM the district court with respect to the issues presented in Wood's direct appeal. We AFFIRM the district court's denial of Rice's request for an evidentiary hearing on all but the three issues identified above in Rice's cross-appeal, as to which we REVERSE and REMAND for further proceedings consistent with the above.

WALLACE, Chief Judge, concurring in part and dissenting in part:

I concur with the majority opinion with respect to the cross-appeal. However, I cannot agree with the majority's analysis of the direct appeal pertaining to Rice's absence

---

**13.** Although Rice has asserted additional claims in his cross-appeal, our examination of the record leads us to conclude that the district court did not abuse its discretion by denying the request for an evidentiary hearing with respect to those other issues. *See Swan v. Peterson,* 6 F.3d at 1384.

from the courtroom when the jury returned the penalty phase verdict. I therefore dissent from this portion of the majority's opinion.

## I

The district court determined that Rice "could not" and "did not" waive his right to be present when the jury returned the penalty phase verdict. It is not clear what the district court meant when it stated that Rice "could not" waive the right. I do not believe that the district court meant that Rice was not competent to waive his right, because that issue was never raised. Indeed, there is no question that Rice was competent to stand trial. His attorney conceded that he was competent to stand trial, and the jury had rejected his insanity defense at the guilt phase. If the district judge thought that Rice "could not" waive his presence at sentencing as a constitutional matter, he was wrong as a matter of law. "There is no principled basis for limiting to noncapital offenses a defendant's ability knowingly, voluntarily, and intelligently to waive the right of presence." *Campbell v. Wood*, 18 F.3d 662, 672 (9th Cir.) (en banc), *cert. denied*, — U.S. —, 114 S.Ct. 2125, 128 L.Ed.2d 682 (1994).

Whether Rice "did not" waive his right is another question. "We must indulge every reasonable presumption against the loss of the constitutional right to be present at a critical stage of the trial." *Id., citing Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970). The evidence is ambiguous regarding why Rice drank a liquid tobacco substance that resulted in his hospitalization. Because the evidence on this point is unclear, we should not infer that Rice's absence at a critical stage of his trial was voluntary.

I would not attempt to divine what the district judge meant by his "could not" statement. I agree that the record does not permit us to hold that Rice voluntarily absented himself from this phase of the proceedings, and that therefore the finding by the district court that Rice "did not" waive his right cannot be overturned.

## II

But that is where my agreement with the majority ends. The majority goes on to conclude that because the State of Washington allows any one juror to set aside the death penalty, and because the jurors did not have to "look Rice in the eye" during the polling process, the absence of Rice during the reading of the death verdict was structural error mandating retrial of the penalty phase.

Ordinarily, a trial error, even a constitutional one, is subject to harmless error analysis. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The term "structural error" is meant to indicate that some error has occurred that affects "the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (*Fulminante*). Structural errors are not subject to harmless error analysis. *Id.*

The question then becomes: does Rice's absence from the returning of the death verdict constitute an error such that the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair"? *Id., quoting Rose v. Clark*, 478 U.S. 570, 577–78, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). The majority answers this question in the affirmative. I cannot agree.

The majority relies upon the unnecessarily broad language of *Hays v. Arave*, 977 F.2d 475 (9th Cir.1992) (*Hays*), where we said that "unconstitutional *in absentia* sentencing is a 'structural' error" that "cannot be affirmed on the basis of harmless error." *Id.* at 479. Whether we should follow this dictum is the issue that divides us. I conclude we should not for two reasons.

First, the *Hays* dictum ignores the Supreme Court's language in *Fulminante* that the denial of a defendant's right to be present at trial *can* constitute harmless error. *Fulminante*, 499 U.S. at 307, 111 S.Ct. at 1263 (discussing harmless constitutional error cases and specifically recognizing that *Rushen v. Spain*, 464 U.S. 114, 117–18 & n.

2, 104 S.Ct. 453, 455 & n. 2, 78 L.Ed.2d 267 (1983) held that violation of a right to be present at trial can be harmless error). This reason alone is sufficient for us to employ harmless error analysis in this case. Language in *Hays* to the contrary must be ignored because we are required to follow the Supreme Court, even when our prior statements are to the contrary.

Furthermore, *Hays* is clearly distinguishable. In *Hays,* the defendant was not just absent from the returning of the verdict. Rather, the defendant was completely absent during the entire sentencing proceeding. In fact, the defendant was physically incarcerated in a different state and was absolutely unable to make an appearance or give a statement at his sentencing hearing. Because of his inability to make a statement on the record, we were concerned that he would have no chance to create a record for appeal. Without being able to tell what he would have said and how the government and his attorney would have reacted to his statements, we were completely unable to evaluate "the impact of the error on the outcome of the proceeding." *Hays,* 977 F.2d at 480 & n. 10 (distinguishing *Boardman v. Estelle,* 957 F.2d 1523 (9th Cir.1992), on the ground that in *Boardman,* the denial of the right of allocution was governed by harmless error analysis because the defendant's request to speak served to establish a record of what he would say). In this case, however, Rice had no role to play at this phase of the trial. He had no right to speak, and could create no record even if he were present.

"Trial errors" are those for which it is possible to make a reasonable evaluation of the likelihood that the error would have affected the outcome. "Structural errors," on the other hand, are those that so fundamentally undermine the fairness of the proceeding that we are unable effectively to evaluate the effect of the error. In this case, we have all of the information we need to evaluate the likelihood that the outcome would have been different had Rice been present. His absence did not taint other aspects of the trial or sentencing. Indeed, the argument that one of the jurors might have changed his or her mind after looking Rice in the eye is fanciful. A "trial error" is not transformed into a "structural error" simply because there is some conceivable way in which the error might have affected the outcome. To the contrary, because appellate review of the likely consequences of the error is possible, the error should be deemed a "trial error" subject to harmless error analysis.

Therefore, the real question is whether the error was harmless beyond a reasonable doubt. I have no question on this issue. Without going into the ghastly, gory details, it is sufficient to state that the jury had portrayed before it crimes that were especially heinous. The mitigating evidence consisted of testimony by four of Rice's relatives. During deliberations, Rice's confession was played back for the jury to consider. Rice was present throughout trial except for when the verdict was received. At sentencing, the judge asked Rice if he had anything to say, and he responded that he did not. Applying harmless error analysis to these facts, there is simply no persuasive reason to conclude that Rice's absence "had substantial and injurious effect or influence" on the jury's sentence.

The majority has ignored binding Supreme Court precedent and, instead, extended the *Hays* dicta in order to adopt the extremely broad and legally indefensible proposition that a defendant's absence during the returning of a jury verdict at the penalty phase of trial is structural error. Because I believe it is subject to harmless error analysis, and because I conclude that the error in this case was harmless beyond a reasonable doubt, I respectfully dissent from that portion of the majority opinion that holds otherwise.

Because the majority concludes that there was structural error when Rice was not present when the penalty verdict was returned, I respectfully dissent.

Before: WALLACE, Chief Judge.

## ORDER

April 10, 1995

Upon the vote of a majority of nonrecused regular active judges of this court, it is ordered that this case be reheard by the en banc court pursuant to Circuit Rule 35–3.