905 P.2d 567

**STATE of Arizona, Appellee,**

v.

**Gregory A. LEVATO, Appellant.**

**No. 1 CA–CR 93–0811.**

Court of Appeals of Arizona,
Division 1, Department C.

July 20, 1995.

Review Granted on issue A and
Denied on other issues Nov. 21, 1995.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, and R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Neal W. Bassett, Phoenix, for appellant.

## OPINION

EHRLICH, Judge.

Gregory A. Levato ("defendant") appeals his convictions for nine counts of theft and the sentences imposed. He assigns the following as errors by the trial court: one, accepting the jury's verdict in his absence and, two, permitting the prosecutor to question the victims regarding the sources of their investment money.[1] For the following reasons, we reverse the convictions.

### FACTS [2] AND PROCEDURAL HISTORY

The defendant and Carl Bonnivier, acquaintances from prior investment dealings, formed Alert Mortgage Corporation ("AMC"), a mortgage-banking and -brokering business. The defendant shortly thereafter started a residential-home construction business known as Regency, obtaining loans from AMC to develop properties in the Phoenix area. AMC's articles of incorporation listed Bonnivier, his wife and daughter as the corporate officers; the defendant was listed as vice-president on the signature cards of AMC bank accounts.

Most of the victims invested in AMC because of their mutual association with Bonnivier in a recreational-vehicle club. They primarily were older couples seeking to boost their retirement income with investments. All were told that they were investing in

---

1. The defendant withdrew a third claim regarding the prosecutor's alleged comment that the defendant did not testify after the matter was remanded and the trial court settled the record.

2. We view the facts in the light most favorable to sustaining the verdicts, resolving all reasonable

inferences against the defendant. *E.g., State v. Atwood*, 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

deeds of trust and that their money was to be used for property development; healthy interest returns were promised. The following failed investments formed the basis of the nine counts of theft in this case: two investments, one for $7000 and one for $90,000, in property lot 7009 by Royce and Diane Almond; a $7000 investment in lot 7009 by Kenneth and Peggy Wiegand; two investments of $25,000, one in lot 7009 and one in "Sunny Heights," by William and Jeannine Hazzard; a $43,120 investment in lot 7009 by Roger and Donna Henselman; an $8000 investment in lot 7009 by James and Eleanor Cathell; a $10,000 investment in lot 7009 by Watson and Patricia Clark; and a $20,000 investment in lot 7009 by Carl and Amelia Warbington. Ultimately, the investors received little or no return on their investments.

Five minutes prior to the jury's delivery of its verdicts, the defendant collapsed due to heart problems. At least two jurors, who then were on break, witnessed the defendant being taken away by paramedics and reported the events to the rest of the jury.

The trial court discussed the defendant's absence from the reading of the verdict with counsel; neither requested a mistrial. Although defense counsel refused to waive the defendant's presence at the return of verdicts, both counsel agreed that, if verdicts had been reached, they should be received in open court. The court accepted the verdicts, finding the defendant guilty as charged.

The trial court later sentenced the defendant to concurrent, presumptive five-year prison terms on Counts 1 through 8, and imposed a consecutive five-year term of probation on Count 9. The defendant was further ordered to pay $800 in felony assessments and $235,120 in restitution. He timely appealed.

## DISCUSSION

### A. Acceptance of the Verdicts in the Defendant's Absence

The defendant first contends that, because he did not waive his right to be present at

the rendering of the verdicts, the trial court committed reversible, constitutional error in accepting the verdicts in his absence. We agree.[3]

■ The right to be present at the return of a verdict is rooted in the due process clauses of the Fifth and Fourteenth Amendments of the United States Constitution. *United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985); *see also Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). A defendant is constitutionally "guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer,* 482 U.S. 730, 745, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987). *See* Ariz.R.Crim.P. 19.2 ("The defendant has the right to be present at every stage of the trial, including ... the return of the verdict.").

■ Additionally, both the Arizona Constitution, Art. 2, section 23, and Arizona law, Ariz.Rev.Stat.Ann. ("A.R.S.") section 21–102, command that jury verdicts be unanimous in all criminal cases. Violation of the unanimity requirement constitutes fundamental error requiring reversal of the conviction. *See, e.g., State v. Woods,* 141 Ariz. 446, 687 P.2d 1201 (1984), *dismissal of habeas corpus aff'd,* 990 F.2d 1266 (9th Cir.1993); *State v. Smith,* 141 Ariz. 533, 535–36, 687 P.2d 1288, 1290–91 (App.1984).

The critical nature of the return-of-verdict proceeding in the defendant/juror relationship was persuasively articulated by the Kentucky Court of Appeals over one hundred years ago:

> The presence of the accused is not a mere form. It is of the very essence of a criminal trial not only that the accused shall be brought face to face with the witnesses against him, but also with his

---

**3.** We are not presented with the issue of a voluntary absence; the defendant suffered a collapse requiring immediate hospitalization. His medical condition made him completely unavailable.

Thus, we address only whether the return of the verdicts during the defendant's involuntary absence was reversible error.

triers.... *And at no time in the whole course of the trial is this right more valuable than at the final step when the jury are to pronounce that decision which is to restore him to the liberty of a citizen, or to consign him to the scaffold or to a felon's cell in the state prison.*

*Temple v. Commonwealth,* 77 Ky. (14 Bush) 769, 771 (1879) (emphasis added). Later courts, elaborating upon the impact of the defendant's presence on the jury, rightly focused on the "psychological" dimension of defendant-juror contact. *See, e.g., United States v. Fontanez,* 878 F.2d 33, 38 (2d Cir. 1989) (reversible error to instruct jury in defendant's absence since defendant deprived of "psychological function" of his presence on jury); *Kimes v. United States,* 569 A.2d 104, 111 (D.C.1989) ("When a jury returns to the courtroom, faces the accused, and, typically, is subject to a poll of the verdict, the psychological influence of the eye-to-eye contact between juror and defendant may be significant enough to cause a juror to change his or her mind when outside the pressure of the jury room."); *Lee v. State,* 509 P.2d 1088, 1094 (Alaska 1973) ("The psychological distinction between a general poll in [the defendant's] absence, and an individual poll requiring each juror to assume the burden of his decision and affirm it in the defendant's presence is not a minor one.").

■ The United States Supreme Court distinguishes between two types of constitutional error: "trial error" and "structural error." Trial error is error "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission is harmless." *Arizona v. Fulminante,* 499 U.S. 279, 307–08, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). In

contrast, structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. at 1265. When structural error is present, the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," and reversal of the conviction is mandated. *Id.*

The Ninth Circuit Court of Appeals, in reviewing a habeas corpus appeal involving a defendant's absence, recently concluded that "it was critically important that the return of the death verdict and the polling of the jurors take place in [the defendant's] presence, where each juror would have to look [the defendant] in the eye and reaffirm his or her jury room vote by declaring in open court that [the defendant] did not deserve to live." *Rice v. Wood,* 44 F.3d 1396, 1402 (9th Cir. 1995). The defendant's sentence was reversed based upon this "structural defect." *Id.* The same assurances and degree of juror solemnity and confrontation apply here.

■ The defendant's involuntary absence from the return of the verdicts in this case was structural, not trial error. It deprived the defendant of that critical moment of confrontation with the jurors whose duty it was to decide his guilt beyond a reasonable doubt.[4]

*B. Questioning as to Sources of Investment Money*

Because we reverse the defendant's convictions and a new trial may be held, we address the defendant's contention that the trial court abused its discretion in permitting the state to question the victims about the sources of their investment money. He argues that the testimony was both irrelevant

4. Arizona Rule of Criminal Procedure 23.1(b) provides for a sealed verdict:

The court may instruct the jurors that if they agree upon a verdict during a temporary adjournment of the court, the foreman may sign the verdict, seal it in an envelope and deliver it to the officer in charge, whereupon they may separate and reassemble in the jury box at a specified time. The officer shall deliver the sealed verdict to the clerk as soon as convenient. When the jurors have reassembled, the

envelope shall be opened and the verdict returned.

When the court authorizes a sealed verdict, it shall admonish the jurors not to make any disclosure concerning it nor to speak with other persons concerning the case until the verdict has been returned and the jury discharged. Such a procedure would have been appropriate here at least until such time as the nature and duration of the defendant's condition could be ascertained.

and highly prejudicial. Again, we agree with the defendant.

Prior to trial, the defendant filed a motion in limine to preclude the state from eliciting testimony from the victims as to the source of their investment money, and the economic and personal hardships brought on by their losses. The state countered that the testimony was "foundational" and "told the story" about how the defendant was able to convince the victims to invest, in some cases their life savings, with him. The trial court granted that portion of the motion relating to the "hardships" suffered but denied it as to the sources of the investment money. The state then proceeded to elicit compelling testimony from the victims, a few examples of which demonstrate the powerful emotional nature of the testimony: Royce Almond related how he had sold his fishing-tackle business and that the money he invested was "all I got"; Kenneth Weigand stated that he and his wife had worked hard for 40 years and "were looking for a little of the good life, and that they told the defendant that the $50,000 investment was "all we had, ... we don't have another penny"; Jeannine Hazzard told the jury that the $50,000 that she and her husband invested was all they had to supplement her husband's retirement- and disability-pension income; and Carl Warbington explained that his $20,000 investment came from retirement savings that represented "a lot of sweat and tears saving it."

■ Potentially inflammatory evidence may be admitted if it is relevant and if its probative value substantially outweighs the peril of unfair prejudice. Ariz.R.Evid. 403; *e.g., State v. Routhier,* 137 Ariz. 90, 98, 669 P.2d 68, 76 (1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984). We examine the trial court's determination to admit such evidence by looking to the purpose for which it was offered. *Routhier,* 137 Ariz. at 98, 669 P.2d at 76. Only when the court abused its discretion will we reverse. *E.g., State v. Hallman,* 137 Ariz. 31, 34, 668 P.2d 874, 877 (1983).

■ The source-of-money testimony is irrelevant to establishing the crime of theft. *See* A.R.S. § 13–1802. The victims' testimony did not make the thefts any "more proba-

ble or less probable" than they would have been without the testimony. *See* Ariz. R.Evid. 401.

Even if that were so, the state responds, there was no prejudice from the admission of this evidence. It argues that, because of the overwhelming evidence of the defendant's guilt, any error was harmless.

■ Because of our disposition of the case on the earlier issue, we need not decide whether the error was harmless. However, "unfair prejudice" " 'means an undue tendency to suggest [a] decision on an improper basis,' ... such as emotion, sympathy or horror." *State v. Schurz,* 176 Ariz. 46, 52, 859 P.2d 156, 162, *cert. denied,* — U.S. —, 114 S.Ct. 640, 126 L.Ed.2d 598 (1993) (*quoting* Fed.R.Evid. 403, Advisory Committee Note). Here, the investment-sources testimony added nothing, in spite of the "complete-the-story" purpose proffered by the state at trial, to the theft evidence considered by the jury. Indeed it smacked of the "hardship" testimony excluded by the trial court. The source of the victims' investment money had no bearing upon the defendant's intent to deprive the victims of their money, his control or unauthorized conversion of the money, or the existence of any material misrepresentation used by the defendant to obtain the investments. The testimony only served to play upon the jurors' sympathy for the victims. This testimony should be excluded in any subsequent proceedings.

## CONCLUSION

For the foregoing reasons, the defendant's convictions are reversed and the case remanded for further proceedings.

GARBARINO, P.J., and FIDEL, J., concur.